759 So.2d 448 (2000)
Kyle TRIGG a/k/a William Kyle Triggs, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00126-COA.
Court of Appeals of Mississippi.
February 22, 2000.
Rehearing Denied May 2, 2000.
*449 David M. Ratcliff, Laurel, Charles W. Wright Jr., Attorneys for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.
BRIDGES, J., for the Court:
¶ 1. This case is a criminal appeal taken from the Circuit Court of Wayne County wherein William Kyle Trigg was found guilty of sexual battery against his wife at the time in violation of Miss.Code Ann. § 97-3-95 (Rev.1994)[1]. Kyle was ordered to serve ten years in the custody of the Mississippi Department of Corrections with nine and three-fourths years of that sentence suspended and to pay fines and court costs totaling $5,448. Displeased with that result, Kyle exercised his right to redress his grievance before this Court alleging the following errors at trial
I. THE MARITAL EXCEPTION TO SEXUAL BATTERY APPLIES TO THE DEFENDANT AND SHOULD EXCULPATE HIM FROM LIABILITY.
II. THE LANGUAGE OF THE INDICTMENT WAS INSUFFICIENT AND IT WAS IMPERMISSIBLY *450 AMENDED BY A JURY INSTRUCTION.
III. THE TRIAL COURT WAS UNDER AN OBLIGATION TO GIVE A SUA SPONTE INSTRUCTION ON THE LESSER OFFENSE OF SIMPLE ASSAULT.
IV. THE THEORY OF THE DEFENSE WAS INADEQUATELY PRESENTED TO THE JURY BY THE INSTRUCTIONS GIVEN AT TRIAL.
V. THE VIDEO TAPE WAS NOT PROPERLY AUTHENTICATED BEFORE IT WAS ENTERED INTO EVIDENCE.
Finding no error at trial, the decision of the lower court is affirmed.

FACTS
¶ 2. William Kyle Trigg and Velma Trigg were married in December of 1995, and one child was born of the union. Soon after the marriage, both Kyle and Velma recognized that the marriage began to deteriorate. Velma admitted having a relationship of some sort with a physician in their hometown of Waynesboro. Although Kyle forgave Velma's marital indiscretion and continued to live with her afterward, they remained unable to find marital reconciliation despite their best efforts to do so.
¶ 3. In what he described as an attempt to restore marital harmony, on July 30, 1997, Kyle made a videotape recording of his wife while she was asleep. On the video, he orally and digitally penetrated her vagina while she was unconscious, without her knowledge or consent. Upon learning of the video, Velma became very angry and two days later filed for divorce. On March 18, 1998, Velma filed charges of sexual battery with the Wayne County Sheriffs Office. Kyle was indicted on June 30, 1998, for sexual battery.
¶ 4. On the evening in question, Velma alleged that Kyle laced food she digested with drugs in an effort to render her unconscious in order to take advantage of the situation. Several tests were run on Velma to determine what, if anything, had been used to render her unconscious. Medicine consistent with a prescription recently filled by Kyle was found in her system. When questioned, Kyle was unable to account for the missing one-half bottle of anti-depressants that matched the substance found in Velma's blood stream. The jury found this evidence convincing. Kyle was found guilty of sexual battery of his wife and sentenced to ten years in the penitentiary, with 9 ¾ years suspended and a $5,000 fine.

LEGAL ANALYSIS

I. THE MARITAL EXCEPTION TO SEXUAL BATTERY APPLIES TO THE DEFENDANT IN THIS SITUATION AND SHOULD EXCULPATE HIM FROM LIABILITY.
¶ 5. Under the facts of the case sub judice, it is impossible to exculpate Kyle from responsibility in light of the statutory language. Kyle was indicted under Miss. Code Ann. § 97-3-95 and found guilty of sexual battery. Specifically, the requirements for conviction under Miss.Code Ann. § 97-3-95(1)(a) and (b) were met in that Velma was passed out, apparently from an overdose of prescription medicine attributed to Kyle. It is impossible for a person who is unconscious to consent to a sexual act, so the language of subsection (1)(a) is clearly violated. Looking to subsection (1)(b) of the statute, Velma's condition could certainly be defined as mentally incapacitated or physically helpless, if not both. She testified that she went to bed wearing a t-shirt, panties and boxer shorts, yet when she awoke, she was completely nude. During the night, Kyle undressed her without her knowledge or consent. It was impossible for her to resist due to her incapacitation resulting from the ingestion of the hidden prescription drugs.
¶ 6. Kyle argues that the "marital exception" language of Miss.Code Ann. *451 § 97-3-99[2] should remove him from criminal responsibility because he never used force. The Mississippi Supreme Court has spoken as to the amount of resistance the victim needed to offer when not under threat of serious bodily injury. In reviewing jury instructions, our supreme court held that an instruction stating the victim must use "all reasonable physical resistance available to her under the circumstances then and there existing to prevent the sexual intercourse" is reasonable if the victim was not in fear for her life. Hull v. State, 687 So.2d 708, 723 (Miss.1996). Velma's unconsciousness reduces her available physical resistance to virtually nothing. In any event, rendering her unconscious with drugs, physically undressing her and sexually penetrating her all require some amount of force. Therefore, this argument is without merit.

II. THE LANGUAGE OF THE INDICTMENT WAS INSUFFICIENT AND IT WAS IMPERMISSIBLY AMENDED BY A JURY INSTRUCTION
¶ 7. Again, force is not an element of sexual battery, rather it is an element necessary to establish the affirmative defense to a charge of sexual battery. The indictment tracked the statute and included all of the essential elements of sexual battery. Any relevant defense must be raised by the defendant; therefore, language concerning potential defenses does not belong in the indictment. So long as the indictment includes the seven enumerated items provided in Rule 7.06 of the Uniform Rules of Circuit and County Court Practice and a concise statement of the essential facts constituting the offense charged, it is sufficient to provide the defendant with notice of the charge against him. Roberson v. State, 595 So.2d 1310, 1318 (Miss.1992). This indictment fits those requirements and is complete on its face.

III. THE TRIAL COURT WAS UNDER AN OBLIGATION TO GIVE A SUA SPONTE LESSER OFFENSE INSTRUCTION ON SIMPLE ASSAULT.
¶ 8. Kyle never requested an instruction on simple assault as a lesser-included offense, but he argues that the trial court had an obligation to sua sponte instruct the jury in any lesser-included offenses. "[C]ase law does not impose upon a trial court a duty to instruct the jury sua sponte, nor is it required to suggest instructions in addition to those which the parties tender." Giles v. State, 650 So.2d 846, 854 (Miss.1995) (citing Conner v. State, 632 So.2d 1239 (Miss.1993)). The appellee's brief raises some question as to whether or not simple assault should automatically be considered a lesser-included offense of sexual battery. The standard regarding whether one offense is a lesser-included offense of another is set out in Sanders v. State:
Whether applied for the benefit of the state or defense, in order to authorize such instruction the more serious offense must include all the elements of the lesser offense, that is, it is impossible to commit the greater offense without at the same time committing the lesser included offense. Also, there must be some evidence to support the lesser included offense
Sanders v. State, 479 So.2d 1097, 1108 (Miss.1985).
¶ 9. Section 97-3-7 of the Mississippi Code provides the elements needed to convict *452 someone of simple assault. It provides that a person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (c) attempts by physical menace to put another in fear of imminent serious bodily harm. Miss.Code Ann. § 97-3-7 (Rev. 1994). It seems clear that the more serious offense of sexual battery does not include all of the elements of simple assault. In fact, they are quite dissimilar in that one could conduct a sexual battery against a person and not commit simple assault because the element of "bodily injury" is missing from the sexual battery statute. Therefore, simple assault does not seem to qualify as a lesser-included instruction of sexual battery.
¶ 10. A lesser offense instruction should not be granted unless there is an evidentiary basis for that instruction in the record. Gangl v. State, 539 So.2d 132, 136 (Miss.1989). In Gangl, the Mississippi Supreme Court ruled that the evidentiary standards for granting a lesser offense instruction and a lesser-included offense instruction are the same, saying, "The better rule in cases such as this is that the defendant may request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment." Gangl, 539 So.2d at 136. Further, "where ... the evidence warrants it, the accused is entitled as a matter of right, upon proper request, to a lesser offense instruction the same as he would be entitled to a lesser included offense instruction." Brady v. State, 722 So.2d 151 (¶ 38) (Miss.Ct.App.1998) (citing Griffin v. State, 533 So.2d 444, 447-48 (Miss.1988)) (emphasis added).
¶ 11. It seems clear that this standard is meant to apply only where the lesser-included offense instruction was requested. While a simple assault may have arisen from the "nucleus of operative fact" in this situation, the record clearly reflects that the attorney for the defendant failed to request the simple assault instruction. We are mindful that there are specific circumstances that require the trial court to instruct the jury sua sponte. See, e.g., Peterson v. State, 518 So.2d 632, 638 (Miss. 1987) (limiting instruction required stating that jury can only consider defendant's prior convictions for impeachment purposes). This case does not fall under that narrow regimen.

IV. THE THEORY OF THE DEFENSE WAS INADEQUATELY PRESENTED TO THE JURY IN THE INSTRUCTIONS AS GIVEN.
¶ 12. Throughout the trial, Kyle asserted the affirmative defense of spousal immunity under Miss.Code Ann. § 97-3-99 by asserting that he never used force. Kyle accuses the trial judge of denying jury instructions that adequately explained the theory of his case. The trial judge did not deny those jury instructions offered as D-11 and D-12[3], rather he consolidated them into instructions D-12(a) and S-1 which were given to the jury as C-13 and C-7[4] respectively.
*453 ¶ 13. The supreme court has said many times that an instruction which instructs the jury on the law, according to the facts, is sufficient and a duplicate instruction in different words requested by the defendant is not required. Calhoun v. State, 526 So.2d 531, 533 (Miss.1988). The trial court is not required to instruct the jury over and over again on a point of law, even though some language variations are used in different instructions. Calhoun, 526 So.2d at 533 (citing Laney v. State, 486 So.2d 1242, 1246 (Miss.1986)). Clearly the instructions given to the jury were sufficient on both the facts and law involved. Simply because the trial judge rephrased some of the defendant's suggested language leaves no basis for reversal on that point. The theory whether or not Kyle used force upon his wife is adequately covered with the instructions as given.

V. THE VIDEO TAPE WAS NOT PROPERLY AUTHENTICATED BEFORE IT WAS ENTERED INTO EVIDENCE.
¶ 14. Under this last assignment of error, Kyle states that the video was not properly authenticated before admitted into evidence at trial. He raises his objection in three sub-issues: (1) whether the tape was an authentic representation of the events that took place the evening in question, (2) whether proper chain of custody was established, and (3) whether the original tape contained additional material that would have corroborated defendant's testimony.
¶ 15. Addressing the first sub-issue, the record is clear that Velma testified at trial that she copied the original mini-cassette tape onto a standard size cassette during her divorce trial so the chancellor could view its contents. She testified to authenticity as follows:
Q: Okay. This tape that I presented you, did you make this tape?
A: Yes.
Q: You copied the smaller tape onto this one?
A: Yes.
Q: And is it in the same condition it was when you taped it?
A: Yes.
Q: Is the same thing exact thing on the TV when it is played as the small tape was?
A: Yes.
Q: Okay. So it is a true and correct copy of what was filmed that night?
A: Yes.
¶ 16. Over objection as to its authenticity, the trial judge admitted the tape into evidence. However, under cross-examination Kyle admitted that the tape introduced at trial was an accurate representation of the events that took place that night. He testified as follows:
Q: Now, that you've seen the tape, that is accurate an accurate depiction of what happened that night; is that correct?
A: Yes, it is.
Since Kyle made the original videotape, his statement that the copy is an accurate *454 depiction of what happened the night in question quashes any argument challenging its authenticity on appeal.
¶ 17. As for the second sub-issue, the test for chain of custody is to determine if there had been any tampering with the evidence. Gibson v. State, 503 So.2d 230, 234 (Miss.1987). Since the tape was authenticated as accurate by both the defense and prosecution, this issue becomes a moot point.
¶ 18. In assessing the validity of the third sub-issue, the defendant made no proffer at trial of what exculpatory evidence the original tape may have possessed that the copy did not. Since he presented no evidence at trial along those lines, but instead made broad generalizations in his brief with no specific supporting evidence, it is impossible for this Court to review that allegation. The law is clear that on appeal no error will be found in the exclusion of evidence unless a proffer of that evidence is made on the record. Wilcher v. State, 697 So.2d 1087, 1093 (Miss. 1997).
¶ 19. Having considered the arguments of the appellant and finding each assigned error without merit, the decision of the lower court is hereby,
Affirmed.
¶ 20. THE JUDGMENT OF THE WAYNE COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY AND SENTENCE TO TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH NINE AND THREE-FOURTHS YEARS SUSPENDED LEAVING THREE MONTHS TO SERVE AND FIVE YEARS REPORTING PROBATION UNDER THE SUPERVISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] Miss.Code Ann. § 97-3-95 (Rev.1994) defines "sexual battery" as follows:

(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:
(a) Another person without his or her consent;
(b) A mentally defective, mentally incapacitated or physically helpless person;
(c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or
(d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child. (2) A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.
[2] Trigg relies upon the language of Mississippi Code § 97-3-99 as his defense.

§ 97-3-99. Sexual battery, defense of marriage
A person is not guilty of any offense under Sections 97-3-95 through 97-3-103 if the alleged victim is that person's legal spouse and at the time of the alleged offense such person and the alleged victim are not separated and living apart; provided, however, that the legal spouse of the alleged victim may be found guilty of sexual battery if the legal spouse engaged in forcible sexual penetration without the consent of the alleged victim.
[3] Defendant's Jury Instructions numbered 11 and 12 are listed below.

D-11 The Court instructs the jury that if you find that the sexual conduct of the Defendant, Kyle Trigg was not forcible as against Velma Trigg, then you are to find the defendant Kyle Trigg not guilty of the charge of sexual battery.
D-12 The Court instructs the jury that if you find that the State of Mississippi failed to prove beyond a reasonable doubt that the sexual conduct of the Defendant, William Kyle Trigg with Velma Trigg was forcible, then you are to find the defendant, William Kyle Trigg, not guilty of sexual battery.
[4] Jury instructions C-7 and C-13 are reprinted below exactly as they were given at trial. C-7 The Court instructs the jury that should you find from the evidence in this case, beyond a reasonable doubt that:

1) On or about the 30th day of July in Wayne County, Mississippi;
2) The Defendant William Kyle Triggs, a male person over the age of 18 years, did willfully, unlawfully and forcibly engage in sexual penetration with Velma Triggs, a female person over the age of 18 years;
3) Without her consent and when she was a physically helpless person;
then it is your sworn duty to find the Defendant guilty of Sexual Battery.
If the State failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty of Sexual Battery.
C-13 The Court instructs the jury that if you find that the State of Mississippi failed to prove beyond a reasonable doubt that the sexual penetration by the Defendant, William Kyle Trigg with Velma Trigg was forcible, then you are to find the Defendant, William Kyle Trigg not guilty of sexual battery. However, if you believe beyond a reasonable doubt that William Kyle Trigg intentionally administered drugs to his wife Velma Trigg for the purpose of physically incapacitating her and that she was thereby incapacitated, then no force is necessary to be proven to constitute a sexual battery.