869 So.2d 1040 (2003)
Frank Adam SEIGFRIED, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01488-COA.
Court of Appeals of Mississippi.
October 21, 2003.
Rehearing Denied February 3, 2004.
Certiorari Denied April 8, 2004.
*1041 Jim Davis, Columbia, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before McMILLIN, C.J., BRIDGES, THOMAS and LEE, JJ.
*1042 LEE, J., for the Court.

PROCEDURAL HISTORY
¶ 1. On May 7, 2001, Frank Adam Seigfried was indicted by a Harrison County grand jury on the charge of sexual battery without consent. After a jury trial in August 2002, Seigfried was convicted on the charge and sentenced to serve twenty years in prison. His motion for new trial or in the alternative a judgment notwithstanding the verdict was denied. He appeals to this Court arguing that the verdict was against the overwhelming weight of the evidence, that the court erred in denying his requested jury instructions, that the court erred in allowing a video receipt into evidence, and that the cumulative effect of errors deprived him of a fair trial. Having reviewed each issue, we find no merit and affirm.

FACTS
¶ 2. On the evening of November 10, 2000, fourteen-year-old J.M., sixteen-year-old B.V.,[1] and B.V.'s forty-nine year-old friend, Frank Adam Seigfried, got together with plans to do yard work at Seigfried's home, then have a sleepover. The three went to a store, Seigfried bought whiskey, then they went to Seigfried's home and drank the liquor. Later, Seigfried and the boys went to a video rental store and rented three movies, including two pornographic movies which Seigfried selected. Once back at Seigfried's home, the three drank more whiskey and watched the movies. Seigfried talked about "gay stuff" and bragged on the number of sexual encounters he had, which made the boys uncomfortable.
¶ 3. The boys left Seigfried's home and went to a casino to play video games for a few hours before returning to Seigfried's home. When the boys returned, Seigfried was in bed, and they went to another room where the television was located to sleep for the night. J.M. was on the floor, and B.V. was on the couch. Later, Seigfried entered the room, laid down next to J.M. and began stroking him. He unzipped J.M.'s pants and performed an act of fellatio on him. No consent was asked for or given. J.M. testified that he did not ask Seigfried to stop because, "I felt very weird, and felt like I was going to die, because I had a lot of things went through my head." J.M. testified that Seigfried next went to B.V., but J.M. did not look to see what happened between them because he was in shock and spent the remainder of the night crying.
¶ 4. The following morning, the three went to a casino for breakfast. Afterwards, the boys told B.V.'s sister what had happened, then told the police the same day.

DISCUSSION

I. WAS THE VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 5. Seigfried first argues that the verdict was against the overwhelming weight of the evidence and that he is entitled to a new trial. We look to our standard of review:
"In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." Only in those cases where the *1043 verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.... Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury.
Brady v. State, 722 So.2d 151 (¶ 19) (Miss. Ct.App.1998) (citations omitted).
¶ 6. Seigfried moved for a directed verdict at the close of the State's evidence, arguing that J.M.'s testimony was uncorroborated and contradictory to prior statements he had made, and the State had failed to prove that the act was done without consent. The judge found a directed verdict was not in order since sufficient evidence was presented to allow the jury to decide the case. After the verdict was announced, Seigfried filed a motion for a new trial or in the alternative a judgment notwithstanding the verdict. Therein, he raised the same issues brought in his motion for directed verdict and argued the court erred in denying certain jury instructions, among other things. After a hearing, the motion was denied.
¶ 7. Seigfried's main argument in this issue concerns whether the State proved J.M. failed to consent. Seigfried's indictment lists Section 97-3-95(1)(c) as the charging statute. Under part (c) of section (1), Seigfried is guilty of sexual battery if he sexually penetrates, "[a] child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child...." Miss.Code Ann. § 97-3-95(1)(c) (Rev. 2000). The language of the indictment, however, charges that Seigfried, "did wilfully, purposely, unlawfully and feloniously commit Sexual Battery upon J.M., without the consent of the said J.M., by engaging in the act of sexual penetration, to wit: by performing fellatio on the said J.M. ...." This language is reflective of section (1)(a) of the statute, not (1)(c). Section (1)(a) fails to mention age but simply states that a person is guilty of sexual battery if he engages in sexual penetration with another person without his or her consent. The State proceeded at trial to prosecute Seigfried on section (1)(a) which includes the consent element.
¶ 8. Seigfried argues that the State failed to prove that J.M. failed to consent and cites the following facts in support of his argument: both boys felt free to come and go from Seigfried's home as evidenced by their trek to the casino arcade; J.M. testified that he did not say no to Seigfried's advances, nor did he try to stop him; J.M. did not act like a fearful or intimidated child, since he openly drank liquor with Seigfried; and no evidence was presented to show that Seigfried threatened J.M. The State rebuts that, although J.M. testified that he acquiesced to Seigfried's actions out of fear, such acquiescence is not consent. Plus, J.M.'s testimony was corroborated by the testimony of his friend, B.V., by J.M.'s act of crying after the event and by J.M.'s reporting of the incident to the police the day after it happened; therefore, the State claims the case was sufficient to submit to the jury.
¶ 9. A rape victim's uncorroborated testimony alone is sufficient where it is consistent with the circumstances. McKnight v. State, 738 So.2d 312(¶ 10) (Miss.Ct.App.1999). Although we recognize that this is a case of sexual battery and not rape, here, J.M.'s testimony was corroborated by B.V., plus it was not discredited nor contradicted. Whether or not J.M. consented was for the jury to determine based on evidence presented to them. Failure to resist a sexual advance out of perceived fear of bodily harm has been shown to negate allegations that such inaction constituted consent. See Hull v. State, 687 So.2d 708, 723 (Miss.1996).
*1044 ¶ 10. The jury was told how J.M. cried after the fact, how he felt intimidated into submission, and how he was under the influence of alcohol during the episode. Although J.M. failed to show that Seigfried threatened him or assaulted him in any way, save the act at issue, the jury was able to view this evidence and the demeanor of the witnesses in determining whether or not J.M.'s actions constituted consent. Accordingly, we will not disturb the verdict.

II. DID THE COURT ERR IN REFUSING AND GRANTING CERTAIN JURY INSTRUCTIONS?
¶ 11. Seigfried argues that the court erred in refusing certain of his requested jury instructions and in granting one of the State's instructions which misstated the law.
In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.... The main query is whether (1) the jury instruction contains a correct statement of the law and (2) whether the instruction is warranted by the evidence.
Sanchez v. State, 792 So.2d 286 (¶¶ 6-7) (Miss.Ct.App.2001).

a. Instruction D-7
¶ 12. Seigfried first argues that the court erred in refusing his requested instruction D-7 which stated:
The Court instructs the Jury that consent is a defense to a Sexual Battery charge. Consent may be manifested by signs, actions, or facts, or by inaction or silence, from which arises an inference that the consent has been given. It exists where a person by his line of conduct has shown a disposition to permit another person to do a certain thing without raising objection thereto.
The State has the burden to prove that [J.M.] did not consent to the Defendant's acts on November 11, 2000. If the State has failed to prove beyond a reasonable doubt that [J.M.] did not consent to the Defendant's acts of November 11, 2000, then you must return a verdict of not guilty.
¶ 13. Seigfried argued to the trial court that in refusing to give this instruction, the judge effectively took away his ability to defend himself since this instruction reflected the major theory of his case, which was that J.M. consented. The State referred the judge to McKnight v. State, 738 So.2d 312 (Miss.Ct.App.1999). In McKnight, the judge refused to grant the exact same instruction as Seigfried's requested D-7. We affirmed the refusal and quoted the following rules:
[A]n instruction which instructs the jury on the law, according to the facts, is sufficient, and a duplicate instruction in different words, requested by the defendant, is not required. Also, a court is not required to instruct the jury over and over on a point of law, even though some variations are used in different instructions. If the jury is fairly instructed by other instructions, the refusal of similar instructions is not reversible error.
McKnight, 738 So.2d at 319 (¶ 24) (citations omitted). In the present case, the judge commented that the phrase "without consent" is easily grasped, and the jury could certainly grasp the definition of the phrase. Also, the judge noted that in light of McKnight, the instruction was not needed.
¶ 14. Seigfried makes much of the fact that during deliberations the jury sent a note to the judge which read, "in regard *1045 to a minor what is concent [sic]." The judge sent a note back to the jury which responded, "You have received all of the evidence and have been instructed as to the law. Please resume your deliberations." After sentencing, the issue of the jury note came up again. The judge noted the following with regard to instruction D-7 and the jury's note:
Well, that instruction has nothing to do with the inquiry from the jury. That instruction simply gave some examples of what could or could not bewhat may or may not be consent. That instruction had nothing to do with a minor. And this note strictly states "In regard to a minor, what is consent?"
The way the case was indicted, it was indicted as if it was a sexual battery charge againstwith the victim being an adult. And it's the Court's opinion that all that did was place a greateror an additional element that the State had to prove, lack of consent. And so I don't think that instruction was necessary or needed.
¶ 15. Seigfried was not indicted for sexual battery against a minor, but on a general charge; thus, the jury's confusion was misplaced. Wherever the judge's confusion lay with regard to the State's need to prove consent or lack thereof, the issue of consent was covered in instruction S-1 which was given and read:
The Court instructs the Jury that the Defendant, FRANK ADAM SEIGFRIED, is charged in an indictment with the crime of Sexual Battery.
If you find from the evidence in this case beyond a reasonable doubt that:
1. On or about November 11, 2000, in the Second Judicial District of Harrison County, Mississippi,
2. The Defendant, FRANK ADAM SEIGFRIED, did willfully, purposely, unlawfully and feloniously commit Sexual Battery upon J.M., without the consent of the said J.M.,
3. By engaging in the act of sexual penetration, to wit: by performing fellatio upon the said J.M.,
then you shall find the Defendant, FRANK ADAM SEIGFRIED, Guilty of Sexual Battery.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant Not Guilty of Sexual Battery.
¶ 16. As stated earlier, so long as the instructions fairly announce the law, duplicate instructions on the same point are not needed. Instruction S-1 noted above reflected the statutory language, and the judge found that the jury could "easily grasp" the basic meaning of consent; thus, any additional instruction was not warranted.
¶ 17. The matter of the victim's status as a minor was not an issue, since the State proceeded through the trial on the premise that he was an adult. We find the judge's response to the jury's question to be without error. Also, we find no fault in the judge's denial of instruction D-7, in light of McKnight and in light of the fact that the issue of consent was addressed in instruction S-1, which was given.

b. Instruction D-4
¶ 18. Seigfried also requested Instruction D-4 which instructed on the lesser-included offense of assault. We look to the definition of what constitutes a lesser-included offense:
Whether applied for the benefit of the State or defense, in order to authorize such instruction the more serious offense must include all the elements of the lesser offense, that is, it is impossible to commit the greater offense without at the same time committing the *1046 lesser included offense. Also, there must be some evidence to support the lesser included offense.
Trigg v. State, 759 So.2d 448 (¶ 8) (Miss.Ct. App.2000).
¶ 19. Seigfried's requested instruction described three possible verdicts which could be reached including guilt of sexual battery, guilt of simple assault, or not guilty. The instruction then described elements of each offense. Seigfried argued to the judge that the State failed to prove that J.M. did not consent, and without such proof he could, at most, be guilty of simple assault; thus, the instruction was needed. In refusing this instruction, the court stated that, "in this case, the only testimony has been one specific act that I don't think leads to any interpretation other than whether or not the act occurred, or whether it did or did not occur, and then thereforeand subsequently, whether or not it was with or without consent." Thus, the judge found no evidentiary basis for the instruction on assault, as required by Trigg.
¶ 20. Further, in Trigg, this Court addressed whether simple assault could be a lesser-included offense of sexual battery:
It seems clear that the more serious offense of sexual battery does not include all of the elements of simple assault. In fact, they are quite dissimilar in that one could conduct a sexual battery against a person and not commit simple assault because the element of "bodily injury" is missing from the sexual battery statute. Therefore, simple assault does not seem to qualify as a lesser-included instruction of sexual battery.
Id. at (¶ 9). No bodily injury was shown here, nor was any other evidence submitted to support the jury's finding of simple assault rather than sexual battery. We find the trial court did not err in refusing instruction D-4.

III. DID THE TRIAL COURT ERR IN ADMITTING A RECEIPT FROM A VIDEO STORE?
¶ 21. Seigfried complains that the trial court erred in allowing the State to introduce into evidence a receipt from a video store where he allegedly rented three videotapesthe movie, "The Patriot," and two pornographic movies.
Our standard of review regarding whether the trial court committed error in the admission of particular evidence is well settled. The trial judge has considerable discretion in determining the admissibility of evidence. We will not reverse the trial court's decision merely because of an erroneous evidentiary ruling. Rather, the appellant must demonstrate that he was effectively denied a substantial right by the evidentiary ruling before a reversal is required. There must be a showing that the trial judge abused his discretion and that "the admission or exclusion of evidence ... results in prejudice and harm or adversely affects a substantial right of a party."
Kidd v. State, 793 So.2d 675 (¶ 27) (Miss.Ct. App.2001) (citations omitted). Seigfried claims the receipt which corroborated J.M.'s testimony was not properly authenticated and, thus, was inadmissible.
¶ 22. In his argument, Seigfried questions the manner in which the receipt was obtained. Investigator Earl Grimes of the Biloxi Police Department went to the video store where Seigfried had allegedly rented videotapes. He presented a subpoena duces tecum to the store manager and was given a pile of receipts from Seigfried's account to examine. In the pile, Officer Grimes found a receipt dated November 10, 2000, for "The Patriot" and for two pornographic videos, which both J.M. and *1047 B.V. testified were the three videos rented by Seigfried.[2]
¶ 23. On appeal to this Court, Seigfried argues that the receipt was inadmissible without a custodian of records from the video store testifying as to the authenticity of the receipt. The trial judge ruled the receipt admissible based on Officer Grimes's testimony that he obtained the receipt after presenting a properly executed subpoena duces tecum from the justice court. Additionally, the judge found sufficient indicia of trustworthiness, citing to Mississippi Rule of Evidence 902(11)(a)'s concluding sentence which states with regard to self-authentication of records of regularly conducted activities, "Such records are not self-authenticating if the sources of information or the method or circumstances of preparation indicate lack of trustworthiness."
¶ 24. Rule 901(a) of the Mississippi Rules of Evidence states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." We note the previously stated standard of review concerning the trial court's considerable discretion in admitting evidence. Having reviewed the circumstances under which the receipt was obtained, Officer Grimes's testimony concerning the same, and the judge's ruling as dictated in the record, we find the judge did not abuse his discretion in admitting the evidence. This issue is without merit.

IV. DID THE CUMULATIVE EFFECT OF ERRORS DEPRIVE THE APPELLANT OF A FAIR TRIAL?
¶ 25. Seigfried finally argues that the cumulative effect of errors he raises on appeal deprived him of a fair trial. Having found no error with other issues he raises on appeal, we find this issue to be without merit.
¶ 26. THE JUDGMENT OF THE SECOND JUDICIAL DISTRICT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF SEXUAL BATTERY WITHOUT CONSENT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] The boys were minors at the time of the incident, and we use initials to protect their identities.
[2] Officer Grimes testified that the receipt for the three movies was dated November 11, 2000, and no receipt was found in the pile from November 10, which was the date the boys were with Seigfried. However, in our review of this receipt, we note the officer's apparent confusion in that the actual receipt states at the bottom, "TODAY IS Friday 11/10/2000 6:54 p.m.," but the due date for return of the movies is listed beside their titles as Saturday, November 11, 2000.