913 So.2d 1053 (2005)
Matthew WELLS a/k/a Matthew Earl Wells, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00296-COA.
Court of Appeals of Mississippi.
June 28, 2005.
Rehearing Denied October 25, 2005.
*1055 George S. Shaddock, Pascagoula, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, C.J., IRVING and GRIFFIS, JJ.
KING, C.J., for the Court.
¶ 1. Matthew Wells was convicted by a jury in the Circuit Court of Jackson County of felony child abuse. Wells was sentenced to a term of fifteen (15) years, with seven (7) years suspended, and eight (8) years to be served, in the custody of Mississippi Department of Corrections. Aggrieved by the conviction, Wells has appealed and asserts the following issues, which we quote verbatim.
PROPOSITION ONE: Whether the trial court erred in failing to sustain the Defendant's objections to hypothetical questions addressed to the State's expert, *1056 said questions assuming matters not in evidence, nor the opinions disclosed in discovery.
PROPOSITION TWO: Whether the trial court erred in not granting a mistrial upon the submission of opinion testimony of State's witness, Cherie Riendeau.
PROPOSITION THREE: Whether the trial court erred in not suppressing the suspect pre-arrest statement of the Defendant
PROPOSITION FOUR: Whether trial court erred in granting Jury Instruction C-2 (CP-64), said Instruction being an incorrect statement of the law in this State.
PROPOSITION FIVE: Whether the trial court erred in denying the Defendant proffered Jury Instructions D-3 (CP-77), D-4 (CP-78), and (D-5) (CP-79), on the State's burden of proof and reasonable doubt.
PROPOSITION SIX: Whether the State met its burden of proving all essential elements of the crime of felony child abuse beyond a reasonable doubt.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. The defendant Wells shared a residence with his girlfriend, Samantha Dunbar, and her two-year old twin sons, Tevin and Devin. Wells worked until 1:00 a.m.; Dunbar worked the morning shift from 4:00 a.m. to 9:00 a.m. While Samantha Dunbar worked, the boys were in the primary care of Wells between the hours of 4:00 a.m. until 9:00 a.m. On November 3, 2000, at approximately 9:00 a.m, Dunbar arrived home from work and discovered Wells running upstairs attempting to seek medical assistance for Tevin. According to Dunbar, she ran behind Wells and found Tevin lying on the bed with "foam coming from his mouth." With the aid of others, Dunbar transported Tevin to the hospital. At the hospital, it was determined that Tevin had sustained injuries to his head and was in a comatose state. The evidence established that Tevin had sustained retinal bleeding and neurological damage. As a result of the neurological damage, Tevin is unable to walk without assistance.
¶ 4. Given the nature of the injuries, the hospital contacted the Department of Human Services, which contacted the Gautier Police Department. On November 10, 2000, the Gautier Police Department conducted an interview with Wells. This interview was not recorded. On November 30, 2000, Wells voluntarily came to the police station, where from 10:21 a.m. until 11:43 a.m., Officers Cherie Riendeau and Dale Robinson conducted a second interview with him. According to Officer Riendeau, during the November 30, 2000 interview, Wells confessed to "jerking" Tevin and causing the injury. Officer Riendeau testified that although only twenty five minutes of the interview were recorded on video, she took notes prior to starting the video recorder. Riendeau's notes were unavailable. However, she stated that the information contained in those notes had been included in a police report.
¶ 5. During Wells' testimony, he denied having confessed to injuring Tevin. Wells maintained that he was bouncing the children on the bed, when Tevin accidently fell off the bed and hit his head on the floor.

ISSUES AND ANALYSIS

ISSUE I.

Whether the trial court erred in failing to sustain the Defendant's objections to hypothetical questions addressed to the State's expert, said questions assuming matters not in evidence, nor the opinions disclosed in discovery.
¶ 6. Dr. Theodore "Teddy" Millette testified as a prosecution witness and was *1057 accepted by the defense as an expert in the field of pediatric medicine. On the morning of the injury, Dr. Millette was called to the emergency room to evaluate Tevin. During the evaluation, Dr. Millette discovered that Tevin was "having a seizure and had what's called a blown pupil." On the following day, Dr. Millette attempted several times to see if Tevin could function without life support; however, Tevin was unable to breathe normally. Dr. Millette testified that he was "very suspicious that there might be something more than a simple seizure causing the problem." After further tests, he discovered that there was blood behind Tevin's eyes, which was "indicative of head trauma . . . or a head injury of some sort." During its direct examination of Dr. Millette, the prosecution posed hypothetical questions to him regarding the causation of Tevin's injuries. In response to the question of whether Tevin's injuries were accidental or non-accidental, Dr. Millette stated that "whenever you have retinal hemorrhages and a hemorrhage in the brain at the same time, it's, with very few exceptions, anything but a non-accidental injury." Wells asks this Court to hold that the admission of Dr. Millette's testimony based on these hypothetical questions was error.
¶ 7. Under Rule 702 of the Mississippi Rules of Evidence, expert testimony is admissible, if it will aid the trier of fact in understanding the evidence. In circumstances where the expert testimony is helpful, the expert's testimony may be based upon personal observations, or upon hypothetical questions. M.R.E. 703 cmt. The admission or exclusion of expert testimony is within the trial court's discretion and this Court will not disturb the trial court's decision unless the trial court clearly abused that discretion. Sheffield v. Goodwin, 740 So.2d 854, 856 (¶ 6) (Miss. 1999). The Mississippi Supreme Court has held that "[t]he interrogator may frame his question on any theory which can reasonably be deduced from the evidence and select as a predicate therefor such facts as the evidence proves or reasonably tends to establish or justify." Chapman v. Carlson, 240 So.2d 263, 268 (Miss.1970) (quoting 31 Am.Jur.2d Expert and Opinion Evidence Section 56 (1967)). When the facts are in dispute the hypothetical question may be stated in terms consistent with the theory of the interrogator. Strickland v. M.H. McMath Gin Inc., 457 So.2d 925, 928 (Miss.1984). The interrogator cannot, however, assume facts unsupported by any evidence. Id. Whether or not sufficient evidence is present to support the hypothetical question presented to the expert is a question of law for this Court to determine. Id.
¶ 8. Dr. Millette testified that Tevin arrived at the hospital suffering from seizures. The next day after repeated CAT scans, he discovered that Tevin had severe retinal bleeding. He stated that such bleeding indicated head trauma. When asked a hypothetical question about the cause of the injury Dr. Gillette replied, "Whenever you have retinal hemorrhages, it makes it much less likely for non-accidental injuries. Even significant head blows, even NVAs aren't normally associated  massive head injuries in an NVA aren't normally associated with retinal hemorrhages anywhere near as commonly as the shaken baby is."
¶ 9. We hold that sufficient evidence was present to support the hypothetical questions presented to Dr. Millette, as an expert in the field of pediatric medicine. Dr. Millette conducted an actual evaluation of Tevin, and based upon his training in pediatric medicine made certain diagnoses regarding Tevin. Based upon his expertise in the field of pediatric medicine and *1058 his evaluation of Tevin, Dr. Millette was asked to give an opinion as to whether the injuries which he had observed were accidental or non-accidental. Such an opinion is consistent with M.R.E. 702. Dr. Millette's opinion (1) was based upon his medical evaluation of Tevin, (2) was the product of reliable principles and methods of medicine, and (3) those principles and methods were reliably applied to the facts of this case.
¶ 10. We find no merit to this issue.

ISSUE II.

Whether the trial court erred in not granting a mistrial upon the submission of opinion testimony of State's witness, Cherie Riendeau.
¶ 11. Our review of the trial court's decision whether to grant a mistrial is subject to an abuse of discretion standard. Horne v. State, 487 So.2d 213, 214-15 (Miss.1986). The appellate courts of this State have unequivocally held that the trial judge is in the best position to determine the prejudicial effect of an objectionable remark. Alexander v. State, 520 So.2d 127, 131 (Miss.1988). He is therefore afforded considerable discretion to determine whether the remark is so prejudicial that a mistrial should be declared. "Where `serious and irreparable damage' has not resulted, the judge should `admonish the jury then and there to disregard the improp[riety].'" Roundtree v. State, 568 So.2d 1173, 1177-78 (Miss.1990) (quoting Johnson v. State, 477 So.2d 196, 210 (Miss.1985)).
¶ 12. Wells contends that Officer Riendeau's statement that "this was not an accident" warranted the granting of a mistrial. The trial court sustained the objection to the officer's statement and admonished the jury to "disregard the statement by this particular witness." The Court further inquired, "Is there anyone on the jury who feels they cannot do that. Hearing no  having no response we'll proceed." Out of the presence of the jury, Wells moved for a mistrial based on Officer Riendeau's statement that "this was not an accident." The trial court denied the motion.
¶ 13. The rule is well established in the jurisprudence of our state that the jury is presumed to follow an admonition of the trial court to disregard objectionable evidence and that the court's admonition is usually deemed sufficient to remove any prejudicial effect from the minds of the jurors. Walker v. State, 671 So.2d 581, 621-22 (Miss.1995). The jury is presumed to have followed the directions of the trial judge. Id. We find no abuse of discretion in the trial court's denial of a mistrial.

ISSUE III.

Whether the trial court erred in not suppressing the suspect's pre-arrest statement of the Defendant.
¶ 14. Wells contends that his statement to the police was not voluntarily given, and therefore should have been suppressed. He argues that because there were "threats and/or the inducement of Gautier authorities" his statements were not voluntary. Wells testified that he felt threatened because the police told him that he would receive thirty years in the penitentiary if he did not tell them anything.
¶ 15. The record reflects that Wells, of his own volition, went to the police station to talk with Officers Riendeau and Robinson. Wells asked the trial court to suppress any and all statements arising out of his conversation with Officers Riendeau and Robinson as having been involuntarily obtained. This motion was denied.
*1059 ¶ 16. Wells contends that he was not read his Miranda warnings prior to the giving of his statement. The Miranda warnings are only mandated, when a custodial interrogation is being conducted. Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Wells came to the police station of his own volition. He then proceeded to talk with Riendeau and Robinson. When it became apparent that Wells had given, what was considered inculpatory information, the officers gave him the Miranda warnings, obtained his signature on a waiver of rights form, and took another statement from him.
¶ 17. The trial judge determined that Wells went to the police station and sought out the officers, and therefore, this was not a custodial interrogation. He concluded that Wells was not in custody and was not arrested until after the conclusion of the interview.
¶ 18. A trial judge's admission of a confession will only be overturned where an incorrect legal standard was applied, manifest error was committed, or the decision was contrary to the overwhelming weight of the evidence. Kircher v. State, 753 So.2d 1017, 1023 (¶ 27) (Miss. 1999). "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." Herring v. State, 691 So.2d 948, 956 (Miss.1997) (quoting Porter v. State, 616 So.2d 899, 907-8 (Miss.1993)). Once a determination of voluntariness is made by the trial court, the defendant bears a heavy burden in attempting to reverse the trial court's finding that the confession is admissible. Evans v. State, 725 So.2d 613, 634 (¶ 16)(Miss.1997).
¶ 19. The trial court noted that the testimony of the defendant and the officers contradicted each other on the question of threats. The jury, as was its right, found the testimony of the officers to be credible and that of Wells not to be credible. Questions of credibility are properly resolved by the trier of fact. Collier v. State, 711 So.2d 458, 462 (¶ 18) (Miss.1998).
¶ 20. Wells has also raised a question as to the accuracy of his alleged statement. That is a question of the weight to be accorded that evidence. That also is a matter to be decided by the trier of fact. This Court finds no merit in this issue.

ISSUES IV. & V.

Whether the trial court erred in granting Jury Instruction C-2 (CP-64), said Instruction being an incorrect statement of the law in this State. Whether the trial court erred in denying the Defendant proffered Jury Instructions D-3, D-4, and D-5, on the State's burden of proof and reasonable doubt.
¶ 21. Because issues four and five deal with instructions to the jury we will address them together. "Our standard of reviewing a judge's decision concerning jury instructions is as follows: `In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole.'" Conners v. State, 822 So.2d 290, 292 (¶ 5) (Miss.Ct.App.2001). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Id.
¶ 22. Wells alleges that the trial court erred in granting Jury Instruction C-2.[1] He argues that the instruction unfairly *1060 singles out a portion of the testimony. C-2 was given as the court's instruction. It was a correct statement of the law, and was not duplicative. Jury instructions should fairly state the law, be supported by the facts, and not be unnecessarily duplicative. See Seigfried v. State, 869 So.2d 1040, 1044 (¶ 11) (Miss.Ct. App.2003). The instructions of which Wells complains meet all these criteria.
¶ 23. During the prosecution's cross-examination of Wells and in the presence of the jury, the prosecution stated "Yeah. But you were in here when the Judge ruled that that was freely and voluntarily waived correct?" Wells objected to this statement and the trial court sustained his objection.
¶ 24. Later Wells moved for a mistrial based on the prosecution's statement that the judge had ruled on the issue of voluntariness. The trial court took the motion under advisement and admonished the prosecution out of the presence of the jury stating, "Telling the jury that I have already ruled that it [sic] was leaves an imprint of this Court on their minds that the statement is  if I've already found, as a judge, that the statement is admissible and voluntary, it influences their decision. They're never to be told that." The trial court later denied the mistrial; however, the trial court did recommend that it cure the problem by admonishing the prosecution in the presence of the jury. Wells' attorney countered that a statement to the jury would only emphasize the problem, and requested that it be done with the other instructions. The transcript reflects the following:
BY THE COURT: And for the record, Mr. Shaddock, is it your request of the Court to give the admonishment to disregard that questions and to instruct them as to their function in judging the credibility of any statement?
BY MR. SHADDOCK: Judge, I think that the least harmful way to handle this would probably be in the form of a written jury instruction.
BY THE COURT: Would you like me to do that now?
BY MR. SHADDOCK: No, sir. I would like you to do it at the time you instruct the jury.
. . .
BY THE COURT: I think we can fashion an instruction along the lines that, you have heard evidence of a statement given by the defendant to the police 
BY MR. SHADDOCK: Yes, sir.
. . .
By MR. SHADDOCK: Yes, sir. And I think we can fashion an instruction. I think that's the best way to handle it.
¶ 25. Wells alleges that the trial court erred in denying the Defendant's proffered Jury Instructions D-3,[2] D-4,[3] and D-5,[4] on *1061 the State's burden of proof and reasonable doubt.
¶ 26. "Jury instructions are to be read together and taken as a whole with no one instruction taken out of context." Harris v. State, 861 So.2d 1003, 1012 (¶ 18) (Miss.2003). The court may refuse an instruction which "incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Id. at 1013. Therefore, "if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." Smith v. State, 835 So.2d 927, 934 (¶ 23) (Miss.2002).
¶ 27. Instructions D-3 and D-4, which were refused by the trial court, instructed the jury that the burden of proof is on the State to prove the Defendant's guilt beyond a reasonable doubt. The trial court refused these instructions as being repetitive. The State's burden of proof was addressed by defendant's jury instruction D-2. The trial court denied instruction D-5 as an attempt to define reasonable doubt. Our supreme court has stated, "reasonable doubt defines itself; it therefore needs no definition by the court." Barnes v. State, 532 So.2d 1231 at 1235 (1988) (quoting Boutwell v. State, 165 Miss. 16, 143 So. 479, 483 (1932)). Accordingly, there was no error in the refusal of these instructions. This issue is without merit.

ISSUE VI.

Whether the State met its burden of proving all essential elements of the crime of felony child abuse beyond a reasonable doubt.
¶ 28. It is Wells' contention that the evidence presented at trial was legally insufficient to support the verdict. This Court's standard of review on challenges to the sufficiency of the evidence requires that we consider all of the evidence in a light most favorable to the verdict. Collier, 711 So.2d at 461 (¶ 11). This Court may reverse only where, with respect to one or more of the elements of the offense charged, the evidence is such that reasonable and fair-minded jurors could only find the accused not guilty. Id. Whether the jury believed Wells or the officer's account of the facts is an issue of credibility and goes to the weight to be accorded the evidence. It has long been decided that the responsibility of the jury is to view all *1062 evidence and determine its weight and credibility. Id.
¶ 29. Wells contends that there was a total lack of credible proof of intent on his part to knowingly cause harm to Tevin. According to the testimony of Dr. Millette, Tevin's injuries were a result of non-accidental head trauma. Wells disputed that testimony. This clearly raised an issue of credibility to be resolved by the jury. This Court's reading of the record reflects that there was substantial evidence upon which the jury could support a verdict of guilty. This issue is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY OF CONVICTION OF FELONY CHILD ABUSE AND SENTENCE OF FIFTEEN YEARS, SEVEN YEARS SUSPENDED EIGHT, TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Instruction C-2 states: Ladies and Gentlemen of the Jury, you have received evidence of statements made to law enforcement officials by the Defendant, Matthew Earl Wells. Just as you are the sole judges of the facts in this case, it is your exclusive province to determine what weight and credibility will be assigned to the testimony and supporting evidence of each witness in this case, including any statements of the Defendant. You may consider the statements of the Defendant, if any, in light of the manner by which you find it was obtained, and give it such weight and credibility as you think it is entitled.
[2] D-3 states: The Court instructs the jury that the burden of proof in this case is upon the State of Mississippi to prove the Defendant guilty of the crime charge beyond a reasonable doubt. A reasonable doubt may arise from the evidence presented or it may arise from a lack of evidence. You are instructed that if a reasonable doubt does arise, you must resolve said doubt, if any, in favor of the Defendant and return a verdict of not guilty.
[3] D-4 states: The Court instructs the Jury that a verdict of Not Guilty means that you are not satisfied that the State of Mississippi has proven the Defendant's guilty [sic] beyond a reasonable doubt. You need not be convinced that the Defendant is innocent before you return a verdict of Not Guilty. To return a verdict of Not Guilty, it is only necessary that you have a reasonable doubt as to the guilt of the Defendant.
[4] D-5 states: The law presumes a Defendant to be innocent of the crime charged. Thus a Defendant, although accused, begins the trial with a "clean slate"  with no evidence against him. And the law permits nothing but legal evidence presented before the Jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a Defendant, unless the Jurors are satisfied beyond a reasonable doubt of the Defendant's guilty [sic] after careful and impartial consideration of all of the evidence in the case.

It is not required that the State prove guilty [sic] beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reasonable and common sense, the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of her own affairs.
The Jury will remember that a Defendant is never to be convicted on mere suspicion or conjecture.