McMILLIN, C.J.,
for the Court:
¶ 1. Rodney Stamper was convicted of manslaughter in the death of Ivan Cres-well, whom he shot point blank in the face with a .22 caliber rifle after a brief and largely unexplained confrontation at a bridge frequented by fishermen. Stamper’s defense was that he was insane at the time of the shooting because of an unanticipated psychological reaction brought on by drinking a beer after taking a prescrip *1196 tion drug called Wellbutrin. The drug had been prescribed for Stamper in an attempt to help Stamper stop smoking. The State’s theory was that, even if the jury concluded that Stamper’s mental faculties were so impaired at the time of the shooting that he was unable to distinguish between right and wrong, his condition was voluntarily induced by his voluntary consumption of excessive amounts of alcohol in the time leading up to the shooting. The jury, after hearing all the evidence, including a psychiatrist who testified for the defense and one who testified for the State, rejected Stamper’s insanity defense and found him guilty of manslaughter.
¶ 2. In this appeal, Stamper argues that the jury was wrong to reject his insanity defense. It is somewhat unclear whether Stamper contends that the verdict was against the weight of the evidence, thereby entitling him to a new trial, or whether he contends that the State’s evidence on the question of sanity was so lacking as to be insufficient as a matter of law, freeing him from the possibility of further criminal prosecution. We will consider the matter from both angles.
¶ 3. There is no point to engage in a lengthy recitation of the facts. For purpose of our discussion, it is sufficient to say that there was competent evidence from which the jury could reasonably conclude that, at the time of the shooting, Stamper had consumed a substantial amount of alcohol and was heavily intoxicated. Stamper, for his part, did not deny his intoxication. His contention was that he had taken two Wellbutrin pills the morning of the shooting — a drug useful in quitting smoking because smoking while taking the drug causes nausea — but had tried to smoke a cigarette anyway. He said he then consumed one beer to try to kill the resulting bad taste in his mouth and nausea caused by the Wellbutrin. Stamper claimed that he could remember nothing else that occurred after consuming one beer until the next morning. Witnesses to the shooting reported Stamper to be in some sort of confrontation with his victim, although they had apparently met for the first time shortly before the incident. Another witness reported that, shortly after the shooting, Stamper told to him that he had shot a person who had been “messing” with him and, though he did not know whether he had killed the person, that person would not be bothering him anymore.
¶ 4. Dr. Mark Webb testified for Stamper. He offered the opinion that Stamper had experienced an unanticipated dramatic reaction to the combination of alcohol and Wellbutrin that put him into a delirious state in which he could not appreciate the nature and quality of his acts or, alternatively, distinguish between right and wrong in his conduct. Dr. Webb’s opinion was based almost entirely on the subjective fact reported to him by Stamper that he had no recollection of the events of the day after consuming the first beer, which Dr. Webb said was consistent with a drug-induced delirium. Dr. Webb offered his opinion that all of Stamper’s further actions of the day, including purchasing and consuming additional amounts of alcohol, were undertaken after he had already entered into this delirious state so that the intoxication arising out of this additional alcohol could not be considered “voluntary” intoxication. In cross examination, Dr. Webb admitted that he was aware of no other case histories of an individual killing another person while in a delirious Wellbutrin-induced state. He did report having one other patient experience “a loss of several hours due to Wellbutrin,” but did not indicate that the other patient engaged in any violent behavior during that time. It appears that Dr. Webb’s information concerning delirium caused by ingestion of Wellbutrin was gleaned princi *1197 pally from having read the warnings about the drug contained in the Physicians’ Desk Reference.
¶5. Dr. Donald Guild was called as a rebuttal witness by the State. He noted that Stamper had a history of alcohol abuse and said he considered it more probable that Stamper had, after consuming one beer, merely continued to consume alcohol on a voluntary basis until he became substantially intoxicated. He found this more likely than the alternate conclusion that Stamper had entered into an unexpected delirious state as a reaction to the Wellbutrin and that this delirious state preceded his consumption of additional quantities of alcohol. Dr. Guild testified to a medically-recognized phenomenon known as alcohol blackout, which is an inability of a person to later recall his activities while substantially intoxicated and distinguished that condition from a drug-induced delirium.
¶ 6. Dr. Guild agreed that it was likely that Stamper was so impaired that, at the time of the shooting, he was unable to understand that the shooting was wrong. Dr. Guild surmised that, in his intoxicated state, Stamper labored under the impression that he was justified in shooting Cres-well. Nevertheless, Dr. Guild affirmed that, according to his best professional opinion, insofar as Stamper was temporarily unable to distinguish between right and wrong, his inability was caused by voluntary intoxication and was not due to an unexpected chemically-induced delirium.
¶ 7. Mississippi criminal law contemplates a verdict of not guilty by reason of insanity and employs the M’Naughten Rule to define legal insanity. Russell v. State, 729 So.2d 781, 784 (Miss.1997). Under the M’Naughten Rule, a defendant may not be held criminally accountable for his actions if, at the time, the defendant was laboring under such a defect of reason from disease of the mind that either (a) he did not understand the nature and quality of his act, or (b) if he did understand the nature and quality of his act, he did not appreciate that the act was wrong. Roundtree v. State, 568 So.2d 1173, 1181 (Miss.1990). The issue of insanity, once the matter is put in issue, is a question of fact to be decided by the jury. Id.
¶ 8. Mississippi law recognizes a distinction between an insanity defense and the situation where a defendant’s reason is suspended because he has voluntarily impaired his mental functions through the use of alcohol or drugs. Since the Mississippi Supreme Court decided the case of McDaniel v. State in 1978, the clear rule of this State has been that “voluntary intoxication by a defendant should not be permitted as a defense if a defendant, when sober, is capable of distinguishing between right and wrong, and the defendant voluntarily deprives himself of reason by intoxication, and commits an offense while in that condition.” McDaniel v. State, 356 So.2d 1151, 1156 (Miss.1978) (Sugg, J., specially concurring joined by majority of participating justices).
¶ 9. For purposes of our analysis of Stamper’s argument, we will concede for the moment that, if Stamper suffered such a sudden, unexpected, and severe reaction to the combination of one beer and his daily dose of Wellbutrin that he became delirious and his ability to reason was suspended, his subsequent consumption of alcohol leading to severe intoxication could not be classed as “voluntary” intoxication within the meaning of McDaniel. However, even conceding that to be the proper view as a matter of legal theory, the record in this case contains expert testimony from a duly-qualified medical expert for the State that, in his opinion, Stamper’s intoxication was the result of his voluntary actions and was not the product of irrational behavior during a time that Stamp *1198 er’s reason had been clouded by an unexpected delirious state brought on by the combination of Wellbutrin and the relatively small quantity of alcohol contained in one beer. The question of Stamper’s sanity, therefore, appears to hinge on disputed facts rather than an error in applying the law pertaining to an insanity defense.
¶ 10. When considering a challenge to the sufficiency of the evidence on any issue necessary to support a conviction, our duty is to review all the evidence in the light most favorable to the State and to reverse only if we conclude that, viewing the evidence in that light, reasonable and fair-minded jurors could only decide the issue contrary to the way the jury actually decided it. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Dr. Guild’s testimony was, in the view of this Court, sufficient to support a reasonable conclusion by the jury that Stamper was not insane at the time he shot and killed his victim, but that, instead, he was in a state of advanced intoxication brought on by the voluntary ingestion of excessive amounts of alcohol. For that reason, we conclude that Stamper’s challenge to the sufficiency of the evidence that he was sane at the time the crime was committed must fail.
¶ 11. When the claim is that the jury’s verdict is against the weight of the evidence, we review the evidence in the same light and are charged to reverse when, though it may be conceded that there was competent evidence to support the verdict, the evidence pointing away from guilt is of such quantity and quality that we are satisfied that it would constitute a manifest injustice to permit the verdict to stand. Collier v. State, 711 So.2d 458, 461 (Miss.1998). In this case, we have reviewed the testimony of both Dr. Webb and Dr. Guild. Both experts were qualified to offer their opinions as to Stamper’s mental state at the time of the kilhng and as to the cause of that condition. While both experts agreed that Stamper’s mental faculties were so impaired at the time of the kilhng that he was unable to appreciate the fact that shooting another person with whom he had a disagreement was wrong, the doctors’ views varied widely as to the cause of that condition. One doctor, Dr. Webb, was of the opinion that Stamper’s diminished capacity was brought on by an unexpected severe reaction to a prescription drug. The other doctor, Dr. Guild, was of the opinion that the condition was brought on by voluntary intoxication. Dr. Webb’s testimony, as we have previously noted, was not supported by anything other than his reading the warning of potential side effects appearing in the Physicians’ Desk Reference and his knowledge that another patient had experienced a short “blackout” interlude, unaccompanied by any known violent behavior, while taking the drug. Dr. Guild, in support of his opinion that Stamper’s condition was not the result of an unexpected severe reaction to Well-butrin, testified that he was aware of no case histories of violent behavior believed to have been caused by Wellbutrin-induced delirium. On these facts, we do not find Dr. Webb’s testimony to be of such persuasiveness that, when weighed against the competing view offered by Dr. Guild, it tends so heavily toward a finding of insanity that Stamper’s conviction was manifestly unjust. This verdict must be upheld.
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO NEWTON COUNTY.
*1199 KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ, CONCUR.