## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-00785-SCT

*TIMOTHY WAYNE WALLACE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/29/2008 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | TATE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TOMMY WAYNE DEFER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/28/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.    Timothy Wayne Wallace was indicted on two counts of sexual battery arising from separate incidents involving thirteen-year-old M.W.  Following a jury trial in the Circuit Court of Tate County, Mississippi, Wallace was found guilty on both counts and sentenced to twenty years in the custody of the Mississippi Department of Corrections ("MDOC") on each count, to run consecutively.  Following denial of his "Motion for Judgment Notwithstanding the Verdict or in the Alternative for New Trial," Wallace filed a timely notice of appeal.

**FACTS**

¶2.     M.W. was born on January 23, 1989. According to M.W., between the ages of thirteen and fourteen, he "was living with [his] granddad, but . . . stayed . . . with [his] aunt [JoAnne Thompson] a lot."[1]  Thompson lived on Yellow Dog Road in Senatobia, Mississippi, along with her daughter, Shanna Ennis, and Ennis's boyfriend, Wallace. M.W. testified that on one occasion, "[m]y aunt had moved out and I was sleeping in [Ennis's] room, and I was watching t.v., and [Wallace] came in there and we got to wrestling around . . . ." According to M.W., Wallace "got on top of me with his knees on my shoulders[,]" and penetrated M.W.'s mouth with his penis. M.W. testified that the entire incident was non-consensual. There were no other witnesses in the room, and M.W. stated that he did not report the incident because "I didn't want anybody to know."

¶3.     M.W. testified that approximately one or two months later, he accompanied Ennis, Wallace, and Wallace's step-nephew, David Croney, to a local Motel 6 because "[t]he water was out at the house, so we was going to go to [the motel room of M.W.'s father's girlfriend, Ann Outlaw] to take a shower."[2]  According to M.W., Wallace and Croney began wrestling, but he was not involved and was merely "sitting right there by [Ennis]." Wallace and Croney then began joking around about slapping M.W. with their penises. M.W. testified that Ennis was encouraging them[3] as Wallace and Croney then "told me they were going to do it, and

---

[1]Thompson testified that M.W. "feels by me like a mother and I feel like he's a son of mine . . . ."

[2]M.W. testified that "[Ennis] was my best friend and she's the only one that I ever really hung out with. So I figured if she was there, wouldn't anything happen."

[3]According to M.W., Outlaw "was just standing there" at the back of the motel room.

I got defensive and told them no, they weren't; and that's when [Wallace] told [Croney] to grab me and hold me down." M.W. stated that "[e]veryone was laughing like it was a big joke[,]" as Croney held his arms down and both Wallace and Croney began slapping him with their penises and "rubbing their privates all over my face and sticking it in my ear and in my mouth."[4] After fighting to get loose, M.W. left the motel room and sat in Ennis's car. While unsure of the specific date, M.W. testified that the motel incident occurred "before I turned 14."[5] According to M.W., he did not report the incident because "I was ashamed of what had happened. . . . [I]t's not something I wanted everybody to know."

¶4. Several years later, M.W. reported both incidents to his case worker at Communicare. The case worker then referred M.W. to Tina Turner of the Mississippi Department of Human Services, Family and Children Services, in Panola County, Mississippi. Regarding the alleged timing of the incidents, Turner testified that M.W. "told me he was 13 and right before he turned 14." As to the incident at the house on Yellow Dog Road, Turner's report

---

[4]While Ennis contended that she pleaded with Wallace and Croney to stop, she otherwise substantially corroborated M.W.'s testimony. Specifically, she stated that Wallace and Croney:

> were tearing everything in the room upside down like the night stands and the lamps and everything, and [Wallace] and [Croney] started joking around about hitting [M.W.] in the face with his privates; and [Croney] held [M.W.'s] arms behind his back while [Wallace] hit him in his face with his penis and on his lip and put it in his mouth . . . .

By contrast, Wallace alleged that Ennis "brought all this up after the fact that she found out she couldn't get custody of our son, and she changed her statement after finding out that I have a child with another woman." Ennis testified that she and Wallace ended their relationship more than one year prior to trial.

[5]Ennis testified that the motel incident occurred in 2002.

reflects that M.W. informed her that Wallace had "held him down over the bed and penetrated him from behind with his penis. He stated that this did not work well for [Wallace] so he felt all over him." Regarding the motel incident, Turner's report provides that M.W. "stated Shanna got mad at him and told [Wallace] and [Croney] to hold him down and do things to him. . . . [M.W.] stated that they held him down and were slapping him in the face with their penises. . . . [M.W.] stated that [Ennis] just watched them and laughed at him." Based thereon, Turner submitted a report to Tate County law enforcement officials, and Wallace was arrested soon thereafter.

¶5.    On March 7, 2007, Wallace was indicted on two counts of sexual battery. Count I provided:

> [t]hat Wallace . . . between the 1st day of January and the 31st day of December, [2003],[6] . . . did wilfully, unlawfully and feloniously, knowingly and intentionally, engage in sexual penetration with [M.W.], a child under fourteen (14) years of age; and [Wallace] being at that time a person twenty-four (24) or more months older than [M.W.],[7] by placing his penis in the anus of [M.W.],[8] in direct violation of Section 97-3-95(1)(d) . . . .

Count II stated:

> [t]hat [Wallace] and [Croney] . . . between the 1st day of January and the 31st day of December, [2003],[9] . . . did wilfully, unlawfully and feloniously, knowingly and intentionally, engage in sexual penetration with [M.W.], a child

---

[6]The indictment subsequently was amended to change the date of the offense to "between the 1st day of January, 2002 and the 22nd day of January, 2003."

[7]Wallace's birth date is November 15, 1980, therefore, he is more than eight years older than M.W.

[8]The manner of sexual battery in Count I was subsequently amended to "by placing his penis in the mouth of [M.W.]."

[9]*See* footnote 6 *supra*.

under fourteen (14) years of age; and [Wallace] and [Croney] being at that time persons twenty-four (24) or more months older than [M.W.], by holding [M.W.] down and placing the penis of [Wallace] in the mouth of [M.W.], in direct violation of Section 97-3-95(1)(d) . . . .

¶6. On January 28, 2008, the jury trial commenced. After the State rested, Wallace moved for a directed verdict, which was overruled by the trial judge. Ultimately, the jury found Wallace guilty on both counts of sexual battery. The circuit court then sentenced Wallace to twenty years in the custody of the MDOC on each count, with "[t]he sentence in Count II [to] run consecutive with the sentence in Count I."

## ISSUE

¶7. This Court will consider:

Whether the circuit court erred in denying Wallace's proposed Jury Instruction D-3.

## ANALYSIS

¶8. Proposed Jury Instruction D-3 provides:

[t]he [c]ourt instructs the jury that if you find from the evidence in this case that [Wallace], is not guilty of the crime of Sexual Battery, then you may proceed with your deliberations to determine whether the State has proven, beyond a reasonable doubt, all of the elements of *the lesser crime of Simple Assault*.

If you find from the evidence, beyond a reasonable doubt, that:

1. The individual identified as [Wallace],

2. Attempted to cause, or purposely, knowingly, or recklessly caused bodily injury to [M.W.],

3. Or, that [Wallace] attempted by physical menace to put [M.W.] in fear of imminent serious bodily harm,

4. By striking or hitting [M.W.] with any part of his body,

5

5. And that [Wallace] was not acting in self defense or was not acting in defense of another,

then you shall find [Wallace] guilty of *the crime of Simple Assault*.

This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge of Sexual Battery but does justify a verdict for *the lesser crime of Simple Assault*.

However, notwithstanding this right, it is your duty to accept the law as given you by the [c]ourt; and if the facts and the law warrant a conviction of the greater crime, then it is your duty to make such finding uninfluenced by your power to find a lesser offense.

(Emphasis added). Regarding this instruction, the circuit judge determined that "[t]here was no testimony at all by [Wallace] that the day of the alleged event that there was any licks passed or anything like that. [Wallace] said that's not my sexual orientation, he denied having any type of contact with him." Accordingly, the circuit judge refused proposed Jury Instruction D-3 for lack of "an evidentiary basis[.]"

¶9. In reviewing challenges to jury instructions:

[t]he Court does not single out any instruction or take instructions out of context; rather, the instructions are to be read together as a whole. A defendant is entitled to have jury instructions given which present his theory of the case. This entitlement is limited, however, in that the court is allowed to refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

*Spicer v. State*, 921 So. 2d 292, 313 (Miss. 2006) (quoting *Parks v. State*, 884 So. 2d 738, 746 (Miss. 2004) (citations omitted)). Our prior cases suggest that a claim such as Wallace's, i.e., that he was entitled to a lesser-included-offense instruction for simple assault, is a question of law, which this Court reviews de novo. *See McCune v. State*, 989 So. 2d 310,

6

318 (Miss. 2008). However, the inquiry necessarily is a mixed question of law and fact, for a factual basis must be offered into evidence to support the instruction.

¶10. A lesser-included offense:

> ["]is one in which *all the essential ingredients are contained in the offense for which the accused is indicted . . . .*" **Porter v. State**, 616 So. 2d 899, 909-10 (Miss. 1993). Therefore, by its very definition, a defendant is always on notice of a lesser-included offense. *In other words, the superior offense cannot be committed without the lesser-included offense also being committed. See* **Harper v. State**, 478 So. 2d 1017, 1021 (Miss. 1985) (stating "the lesser-included crime is encompassed within the crime for which the accused is indicted.").

**Downs v. State**, 962 So. 2d 1255, 1261 (Miss. 2007) (emphasis added). This Court has stated that:

> "[l]esser included offense instructions should be given if there is an evidentiary basis in the record that would permit a jury rationally to find the defendant guilty of the lesser offense and to acquit him of the greater offense."[10] **Welch v. State**, 566 So. 2d 680, 684 (Miss. 1990). In reviewing the propriety of such an instruction, we have stated:
>
>> [a] lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser-included offense (conversely, not guilty of at least one element of the principal charge).
>
> **McGowan v. State**, 541 So. 2d 1027, 1028 (Miss. 1989). However, this Court has repeatedly held that a lesser-included offense instruction should not be indiscriminately granted, but rather should be submitted to the jury only where

---

[10] In fact, "there is 'reversible error in not giving the lesser-included offense instruction.'" **Downs**, 962 So. 2d at 1260 (quoting **Fairchild v. State**, 459 So. 2d 793, 801 (Miss. 1984)).

7

there is an evidentiary basis in the record. **Lee v. State**, 469 So. 2d 1225, 1230 (Miss. 1985).

**Sanders v. State**, 781 So. 2d 114, 119 (Miss. 2001).

¶11.   Mississippi Code Section 97-3-95(1)(d) provides that "[a] person is guilty of sexual battery if he or she engages in *sexual penetration*[11] with: . . . (d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child."[12] Miss. Code Ann. § 97-3-95(1)(d) (Rev. 2006) (emphasis added).  Mississippi Code Section 97-3-7(1) states, in pertinent part, that:

> [a] person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm*;* or (c) attempts by physical menace to put another in fear of imminent serious bodily harm . . . .

Miss. Code Ann. § 97-3-7(1) (Rev. 2006).

¶12.   This Court has not spoken on whether simple assault is a lesser-included offense of sexual battery.  However, the Mississippi Court of Appeals has addressed this issue.  In **Trigg v. State**, 759 So. 2d 448 (Miss. Ct. App. 2000), the defendant drugged his wife, rendering her unconscious, then made a videotape recording of himself "orally and digitally penetrat[ing] her vagina while she was unconscious, without her knowledge or consent." **Id**. at 450.

---

[11]"Sexual penetration" includes "cunnilingus, fellatio, buggery or pederasty, any penetration of the genital or anal openings of another person's body by any part of a person's body, and insertion of any object into the genital or anal openings of another person's body." Miss. Code Ann. § 97-3-97(a) (Rev. 2006).

[12]Mississippi Code Annotated Section 97-3-101(3) states that "[e]very person who shall be convicted of sexual battery under Section 97-3-95(1)(d) who is eighteen (18) years of age or older shall be imprisoned for life in the State Penitentiary or such lesser term of imprisonment as the court may determine, *but not less than twenty (20) years*." Miss. Code Ann. § 97-3-101(3) (Rev. 2006) (emphasis added).

Following his conviction for sexual battery, Trigg argued on appeal that, despite his failure to request an instruction on simple assault, the "trial court had an obligation to *sua sponte* instruct the jury in any lesser-included offenses." *Id*. at 451. Prior to finding that the case did not fall within the "narrow regimen" of "circumstances that require the trial court to instruct the jury *sua sponte*[,]" the Court of Appeals found that:

> [i]t seems clear that the more serious offense of sexual battery does not include all of the elements of simple assault. In fact, they are quite dissimilar in that one could conduct a sexual battery against a person and not commit simple assault because the element of "bodily injury" is missing from the sexual battery statute. Therefore, simple assault does not seem to qualify as a lesser-included instruction of sexual battery.

*Trigg v. State*, 759 So. 2d 448, 452 (Miss. Ct. App. 2000). The Court of Appeals applied the same sound reasoning in *Seigfried v. State*, 869 So. 2d 1040, 1046 (Miss. Ct. App. 2003).[13] This Court finds no flaw in the well-reasoned analysis of the Court of Appeals. Sexual battery (the superior offense) can be committed without a simple assault (the putative lesser-included offense) being committed. *See Downs*, 962 So. 2d at 1261. The elements of the separate offenses are distinctly different, and no facts were presented in this case to persuade this Court that the trial court erred. Therefore, we find no error in the denial of Wallace's proposed Jury Instruction D-3.

---

[13]Writ of certiorari denied by this Court. *See Seigfried v. State*, 870 So. 2d 666 (Miss. 2004).

## CONCLUSION

¶13. Based upon the aforementioned analysis, this Court affirms the judgment of the Circuit Court of Tate County.

¶14. **COUNT 1: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT 2: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES TO BE SERVED CONSECUTIVELY.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY.**