ISHEE, J.,
dissenting:
¶ 80. With respect for the majority, I must dissent. The jury’s question to the court regarding whether Keir Sanders would ever be allowed to “walk as a free man on the street” at least indicates some resistance on the part of the jurors to apply the insanity defense. However, the jury’s question was not conclusive of the fact that it found Sanders guilty despite the overwhelming weight of the evidence. Certainly the jury was concerned that, if Sanders was found not guilty by reason of insanity, he might be released at some point. Because Sanders brutally killed his grandparents, I certainly understand the jury’s concern.
¶81. However, such a consideration does not come into play when determining whether the defendant was not guilty by reason of insanity. The jury was to determine: (1) whether Sanders understood the nature and quality of his acts, and, if he did, (2) whether he understood that those acts were wrong. Stamper v. State, 803 So.2d 1194, 1197 (¶ 7) (Miss.Ct.App.2000) (citing the M’Naughten Rule). If the jury found either of those criteria in the nega *579 tive, then Sanders was not criminally liable for his actions, however heinous they might have been. If the defense was able to create a reasonable doubt about Sanders’s sanity at the time he killed his grandparents, then the burden was on the State to prove beyond a reasonable doubt that Sanders was sane. Hearn v. State, 3 So.3d 722, 738 (¶ 47) (Miss.2008).
¶82. In Gambrell v. State, 238 Miss. 892, 902-03, 120 So.2d 758, 762-63 (1960), the supreme court found that Thomas Gambrell’s conviction of murder was against the overwhelming weight of the evidence. Gambrell offered testimony of a psychiatrist and individuals close to him, who testified concerning Gambrell’s delusions, hallucinations, and irrationality. Id. at 903, 120 So.2d at 762. In contrast, the supreme court found that the State only made a token effort to prove Gambrell’s sanity, and the State’s expert had not examined Gambrell. Id.
¶ 83. In the present case, the defense offered the testimony of Dr. Mark Webb, who examined Sanders after Dr. William Lott. The defense also offered the testimony of Dr. John McCoy, who treated Sanders while he was at Mid-South. Dr. McCoy recounted a list of Sanders’s symptoms, and he described Sanders as “the most mentally ill of all the patients in the hospital” and “the sickest one that had been in that hospital in a long time.” Both doctors testified that, at the time Sanders killed his grandparents, they believed that he understood the nature and quality of his acts, but they did not believe he understood the difference between right and wrong. Similarly, Jannie Had-ley, Sanders’s mother and also the victims’ daughter, testified that Sanders had a long history of mental problems and disturbing behavior.
¶ 84. I find that allowing Sanders’s conviction of murder to stand, based on the evidence before us, would sanction an unconscionable injustice. The evidence does not support the jury’s verdict, as I find that the State failed to prove Sanders’s sanity beyond a reasonable doubt. The case at bar is such an example of a case in which the evidence preponderates heavily against the verdict.
¶ 85. Two doctors, one of them a clinical psychologist who treated Sanders prior to the killings, testified that Sanders did not understand that his actions were wrong. Additionally, the jury’s question to the circuit court revealed that it may have been more concerned with whether Sanders would ever go free than with whether he was insane at the time of the killings. Furthermore, as reflected by the jury’s verdict on Count I, the jury found that Sanders was insane at the time he killed his grandfather, which was moments before he went to the bedroom and shot his grandmother. Therefore, I would reverse Sanders’s conviction and sentence and remand the case to the circuit court for a new trial.
KING, C.J., AND BARNES, J„ JOIN THIS OPINION.