IRVING, P.J.,
for the Court:
¶ 1. On April 5, 2012, a Harrison County jury convicted Brian David Bradshaw of the murder of Benny Johnston. The circuit court sentenced Bradshaw to life in the custody of the Mississippi Department of Corrections. Bradshaw filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, which the circuit court denied. Feeling aggrieved, Bradshaw appeals and argues that (1) the jury’s verdict is against the overwhelming weight of the evidence; (2) the circuit court improperly suppressed Johnston’s blood-toxicology results; and (3) the circuit court erred in giving jury instruction S-12 to the jury.
¶ 2. Finding no error, we affirm.
FACTS
¶3. On April 15, 2010, Bradshaw and Sean Merritt lived with Merritt’s sister, Cali Merritt, in Gulfport, Mississippi. Cali was also Bradshaw’s girlfriend at the time, and they have two children together. Earlier during the day, Merritt and Cali visited with Tiffany Jordan, a friend of Cali’s, at Jordan’s home, where they became reacquainted with Johnston.[1] During the visit, Johnston agreed to assist Merritt with babysitting for Cali and Jordan when they went to work later that evening. Merritt, Johnston, Cali, and the children returned to Cali’s home. Merritt cooked dinner while Johnston cleaned the house.
¶ 4. After the women left for work, Bradshaw came home from work. He drank beer and used drugs with Merritt and Johnston. Later that evening, the men assisted one another in getting the children ready for bed. One of the children complained that she could not sleep. Merritt took the child for a walk, leaving *201 Bradshaw and Johnston at the home to watch the other children. When Merritt returned to the home, Bradshaw and Johnston were arguing in the living room.
¶ 5. At trial, Merritt testified that he did not know what the argument between Bradshaw and Johnston was about and that neither seemed to want to talk to him about the argument. He initially tried to calm the men down but then left the room to put the child, who had been unable to sleep, back to bed. When he returned to the living room, Merritt noticed that Bradshaw and Johnston were still arguing. In an effort to diffuse the situation, Merritt invited Johnston to the garage to smoke, and Johnston agreed. Merritt stated that as he and Johnston were entering the garage, Johnston turned to him to ask for a “cigarette or for a lighter or something,” and he “heard [Johnston] get hit in the head.” He watched Johnston fall to the ground. When he approached Johnston to check for a pulse, Johnston started having convulsions. When the convulsions stopped, Merritt checked to see if Johnston was still breathing. He testified that it was difficult to determine whether Johnston had a pulse because his “own heart was beating so hard.”
¶ 6. Merritt left the garage to check on the children. When he returned to the garage, he noticed that Johnston “had bled a lot by that point” and was not breathing. At this point, Bradshaw entered the garage and stabbed Johnston in the back of his neck. Merritt and Bradshaw loaded Johnston’s body into the back of Bradshaw’s work van and drove to Mount Olive, Mississippi, where they dumped Johnston’s body. Merritt noted that Bradshaw is left-handed.
¶ 7. Cali testified that she called Merritt, Johnston, and Bradshaw on the phone from work throughout the night of the murder. She stated that Bradshaw told her that he and Johnston were arguing but that Johnston later told her that the argument was over. When she got home from work, Johnston’s body was not in her garage, Merritt and Bradshaw were gone, and there was a hole in a wall in the living room. Cali also stated that Bradshaw is left-handed.
¶8. Investigator Joe Sturm, with the Harrison County Sheriffs Office, testified that he was not officially involved with Bradshaw’s case until April 19, 2010, when he took Bradshaw’s statement. On April 19, 2010, Harrison County law enforcement officials questioned Bradshaw at the sheriffs office. During a break in questioning, Bradshaw knocked on Investigator Sturm’s office door and told him that “he wanted to talk.” Investigator Sturm took Bradshaw back to the interview room and took Bradshaw’s statement. According to Bradshaw, on the night of the incident, he and Johnston were “drinking some Canadian Mist whiskey and doing drugs.” One of Bradshaw’s children had awoken, come out of the bedroom, and complained about being unable to sleep. Johnston allegedly told the child to “shut up and go back into the bedroom.” Johnston’s comment to the child angered Bradshaw, which led him to confront Johnston. Bradshaw told Investigator Sturm that Johnston “forced him into the garage” during the confrontation. As they entered the garage, Bradshaw picked up a baseball bat and hit Johnston in the back of the head. Johnston fell to the floor and began convulsing. Bradshaw stated that he stabbed Johnston to “put him out of his misery.”
¶ 9. Dr. Paul McGarry, an expert in forensic pathology, performed the autopsy on Johnston’s body. At trial, he testified that Johnston had no defensive wounds on his body, which signified that he was not “aware that he [was] in danger of being attacked.” Based on the location of the *202 injury to Johnston’s head, Dr. McGarry opined that Johnston was hit from behind by someone who is left-handed. Dr. McGarry also testified regarding the extent of Johnston’s injuries. According to Dr. McGarry, when Bradshaw hit Johnston with the baseball bat, Bradshaw fractured Johnston’s skull and part of “the bone had been driven into the brain cavity.” This injury would have caused unconsciousness and “convulsive seizures to make [Johnston] shake and jerk.” However, according to Dr. McGarry, Johnston “could have survived that [injury].” Dr. McGarry opined, to a reasonable degree of medical certainty, that the cause of death was “the stab wound to the back of the neck[,] severing the spinal cord.”
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. New Trial

¶ 11. Bradshaw contends that the circuit court erred in denying his motion for a new trial. He argues that, at most, the evidence supports a manslaughter conviction, as opposed to a murder conviction, because he killed Johnston in the “heat of passion.”
¶ 12. A motion for a new trial challenges the weight of the evidence. Woodard v. State, 765 So.2d 573, 576 (¶ 16) (Miss.Ct.App.2000). A “motion for a new trial is addressed to the discretion of the [circuit] court, and .... should be invoked [sic] only in exceptional cases in which the evidence preponderates heavily against the verdict.” Weatherspoon v. State, 56 So.3d 559, 564 (¶ 20) (Miss.2011) (quoting Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)). When reviewing a challenge to the weight of the evidence, appellate courts should weigh the evidence in the light most favorable to the jury’s verdict and should “only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (quoting Bush, 895 So.2d at 844 (¶ 18)).
¶ 13. Here, the jury convicted Bradshaw of deliberate-design murder pursuant to Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006). According to Bradshaw, the jury’s verdict is against the overwhelming weight of the evidence because there was no evidence of deliberate design or premeditation, as “[he] and Johnston were engaged in mutual combat and [were] both under the extreme influence of drugs and alcohol.” Because Johnston sustained two injuries, it is important to remember Dr. McGarry’s testimony that, even though the brain injury was serious, the cause of Johnston’s death was the stab wound to the back of Johnston’s neck. Bradshaw’s argument that the verdict is against the overwhelming weight of the evidence fails for a number of reasons.
¶ 14. First, the law of this State has long been “that voluntary intoxication by a defendant should not be permitted as a defense if a defendant, when sober, is capable of distinguishing between right and wrong, and the defendant voluntarily deprives himself of reason by intoxication, and commits an offense while in that condition.” Sanders v. State, 63 So.3d 554, 570 (¶ 52) (Miss.Ct.App.2010) (quoting Stamper v. State, 803 So.2d 1194, 1197 (¶8) (Miss.Ct.App.2000)) (internal quotation marks omitted). There is no evidence that Bradshaw was forced to ingest any drugs or alcohol. Therefore, any intoxication on his behalf was voluntary and cannot be used to reduce this crime from murder to manslaughter.
¶ 15. Second, there is no evidence that Bradshaw and Johnston were engaged in *203 “mutual combat” at the time that Bradshaw killed Johnston. Uncontradicted testimony revealed that the argument between Bradshaw and Johnston was over prior to Johnston’s death. Merritt testified that Johnston had walked away from the confrontation with Bradshaw, and Bradshaw hit Johnston in the back of the head after Johnston walked away. Additionally, as Johnston lay on the floor of the garage, Bradshaw left the garage, retrieved a knife, returned to the garage, and stabbed Johnston in the back of the neck, killing him. According to our review of the record, the evidence demonstrates that at the time of his death, Johnston was incapable of engaging in “mutual combat.”
¶ 16. Third, the Mississippi Supreme Court has stated that “deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent[.]” Windham v. State, 520 So.2d 123, 126 (Miss.1988). Also, our supreme court has held that “[d]eliberate design, as a matter of law, may be inferred through the intentional use of any instrument which[,] based on its manner of use, is calculated to produce death or serious bodily injury.” Jones v. State, 39 So.3d 860, 866 (¶ 32) (Miss.2010) (quoting Wilson v. State, 936 So.2d 357, 364 (¶ 17) (Miss.2006)).
¶ 17. After Bradshaw hit Johnston in the head with the baseball bat, he left Johnston lying on the floor of the garage while he went to get a knife, a deadly weapon. Bradshaw admitted in his confession to Investigator Sturm that he stabbed Johnston in the neck with the knife, which was the cause of death in this case, to “put him out of his misery.” Examining the evidence in the light most favorable to the jury’s verdict, we cannot say that the circuit court abused its discretion in denying Bradshaw’s motion requesting a new trial or that allowing the verdict to stand would sanction an unconscionable injustice. Accordingly, this-issue is without merit.

II. Toxicology Results

¶ 18. Prior to trial, the circuit court conditionally granted the State’s motion in limine seeking to prohibit Bradshaw from introducing the results of Johnston’s toxicology screening. Specifically, the court stated:
With regard to the [Sjtate’s motion in limine regarding toxicology results, intoxication of the victim in and of itself is irrelevant. It does appear, pursuant to argument this morning, that there will be testimony that the victim was using drugs and alcohol on or about the date of the alleged crime. Alcohol and amphetamines [ajffect people differently, and as of now there is no evidence that they increase the propensity of violence or aggression. Moreover, at this time there is no evidence presented that alcohol and/or amphetamines are linked to a propensity to violence either generally or specifically as to this victim. Therefore, absent any evidence to that effect pursuant to [Mississippi Rules of Evidence] 401, 402, and 403, the motion is granted unless a predicate is laid that alcohol and/or drugs, specifically amphetamines, increases the propensity for violence. Alternatively, and as far as [Mississippi Rule of Evidence] 404 applies that in regard to character evidence if an overt act is shown, then the toxicology results and levels are admissible.
Bradshaw contends that the circuit court’s ruling prevented him from presenting his theory of defense to the jury.
¶ 19. “[Appellate courts] review[] the [circuit] court’s admission or exclusion of evidence for abuse of discretion.” Pauley v. State, 113 So.3d 557, 560 (¶ 3) (Miss.2013) (citing Jenkins v. State, *204 102 So.3d 1063, 1065 (¶7) (Miss.2012)). “[UJnless this judicial discretion is so abused as to be prejudicial to the accused, then the ruling of the [circuit] court must be affirmed.” Rouster v. State, 981 So.2d 314, 318 (¶ 9) (Miss.Ct.App.2007) (quoting Francis v. State, 791 So.2d 904, 907 (¶ 7) (Miss.Ct.App.2001)). Based on the record, we cannot say that the circuit court abused its discretion in excluding Johnston’s toxicology results.
¶20. It is undisputed that Johnston used amphetamines and drank alcohol on the night of his death. However, our supreme court has held, and this Court has reenforced, that “evidence of the intoxication of the deceased is irrelevant where the testimony shows that the defendant was the aggressor, or there is no testimony evincing the necessity for the accused to kill the deceased.” Id. at 319 (¶ 14) (quoting Shinall v. State, 199 So.2d 251, 259 (Miss.1967) (overruled on other grounds)). Bradshaw never established the relevancy of Johnston’s toxicology results. Although Bradshaw’s trial attorney argued prior to trial that the toxicology results would support a theory of self-defense, Bradshaw never claimed that he killed Johnston in self-defense. Throughout trial, Bradshaw maintained that he killed Johnston in the heat of passion. Therefore, Johnston’s toxicology results remained irrelevant. Accordingly, this issue is without merit.

III. Instruction S-12

¶ 21. Bradshaw argues that the circuit court erred in giving jury instruction S-12 to the jury because it is an improper statement of the law. Instruction S-12 reads as follows:
The Court instructs you that words alone and disagreements among people are not enough to invoke the passion required for the defense of Heat[-]of[-]Passion Manslaughter. Mere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter.
(Emphasis added). Our standard of review for jury instructions is well settled:
The Court does not single out any instruction or take instructions out of context; rather, the instructions are to be read together as a whole. A defendant is entitled to have jury instructions given which present his theory of the case. This entitlement is limited, however, in that the court is allowed to refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
Westbrook v. State, 29 So.3d 828, 835 (¶ 25) (Miss.Ct.App.2009) (quoting Wallace v. State, 10 So.3d 913, 916 (¶ 9) (Miss.2009)).
¶ 22. According to Bradshaw, instruction S-12 is improper because it contradicts the definition of heat-of-passion manslaughter, which is defined as:
[A] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts oí one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment[,] or terror.
Id. at 835 (¶ 26) (emphasis added) (quoting McCune v. State, 989 So.2d 310, 319 (¶ 15) (Miss.2008)). Despite the apparent conflict between the heat-of-passion manslaughter definition and instruction S-12, instruction S-12 is not an improper statement of the law.
*205 ¶ 23. Our supreme court has held that “words alone and disagreements among people are not enough to invoke the passion required for [heat-of-passion manslaughter]. ‘Mere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter.’ ” Phillips v. State, 794 So.2d 1034, 1037 (¶ 10) (Miss.2001) (quoting Gates v. State, 484 So.2d 1002, 1005 (Miss.1986)). This Court has repeatedly reaffirmed the supreme court’s holding. See Cole v. State, 118 So.3d 633, 640 (¶ 29) (Miss.Ct.App.2012); Robinson v. State, 40 So.3d 570, 576 (¶24) (Miss.Ct.App.2009); Myers v. State, 832 So.2d 540, 542 (¶ 10) (Miss.Ct.App.2002). Therefore, instruction S-12 simply tracks the language found in cases regarding heat-of-passion manslaughter, and the circuit court did not err in giving instruction S-12 to the jury. This issue is without merit.
¶ 24. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF DELIBERATE-DESIGN MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Merritt testified that Johnston grew up in the same neighborhood as he and Cali but that he and Cali had not seen Johnston in several years.