# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00933-COA

**MICHAEL JEROME GERMAN A/K/A**                           **APPELLANT**
**MICHAEL GERMAN A/K/A MICHAEL J.**
**GERMAN A/K/A MICHAEL JEROME**
**GERMAN, JR.**

**v.**

**STATE OF MISSISSIPPI**                                                 **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2021 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN KEITH PERRY JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/20/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WILSON, P.J., GREENLEE AND EMFINGER, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     A jury in the DeSoto County Circuit Court convicted Michael German of aggravated assault.  The circuit court sentenced German to serve fifteen years in the Mississippi Department of Corrections followed by five years of post-release supervision.  He was also ordered to pay a $1,000 fine and court costs.  After the court denied his motion for judgment notwithstanding the verdict (JNOV) or a new trial, German appealed.

¶2.     On appeal, German seemingly claims (1) the State did not present sufficient evidence that he was legally sane at the time of the aggravated assault, and (2) the circuit court erred

by admitting at least a portion of the State's expert testimony. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. In 2018, German was indicted for aggravated assault after he attacked a woman with a metal pegboard hook at a Target in Horn Lake, Mississippi. Prior to trial, defense counsel requested a mental examination to determine whether German was competent to stand trial. The circuit court granted the motion, and Dr. William Criss Lott performed the evaluation. Based on Dr. Lott's report and his testimony at the competency hearing, the circuit court found German competent to stand trial.[1]

¶4. At trial, Toneshia Cooper testified that on June 22, 2018, she was finishing her lunch break in front of Target when she noticed a man—who was later identified as German—walking toward her. According to Cooper, German asked for a hug, but she refused because she did not know him and thought he may have been high on drugs. Cooper testified that German approached two other women, so she called for security. According to Cooper, German continued walking down the sidewalk and then began to run toward the back door of the store.

¶5. Halle Taylor, another Target employee, testified that she was receiving a delivery in the back of the store when German entered through the back door and asked her if there was a bathroom. According to Taylor, German ran off before she could answer his question.

---

[1] The circuit court also found that German was legally sane at the time of the alleged attack. Despite this finding, the defense was permitted to present evidence at trial in support of an insanity defense.

Shortly thereafter, Taylor heard a commotion coming from the seasonal department. When she went to see what was happening, she observed a woman—who was later identified as Christine Upchurch—covered in blood, and she heard German say, "I don't want to kill her" while he was taking off his clothes. Although she did not mention it in her statement to law enforcement, Taylor testified that she assumed German was on drugs. According to Taylor, German ran through the emergency exit when he saw the store manager approach him.

¶6.     Rhea Abbott testified that she was shopping inside Target when she heard Upchurch scream. Then she saw German rush down an aisle and attack Upchurch who was already bleeding. According to Abbott, German grabbed a metal pegboard hook and repeatedly stabbed Upchurch in the back of the head while saying, "Somebody needs to bleed red blood for the sacrifice." Abbott was able to remove German from Upchurch, and he "just quit fighting." Afterward, German began crying, yelling for his mother, and apologizing. Although Abbott did not mention it in her statement to law enforcement, she testified that German had white foam around his mouth and appeared to be on drugs.

¶7.     Similarly, Michelle Legg testified that she was shopping when she heard someone yelling for help. Then she saw German stabbing Upchurch in the head with a pegboard hook and heard him say, "[I don't] want to kill anybody today." Legg indicated that she helped remove German from Upchurch.

¶8.     Upchurch testified that she was shopping when German came up behind her, grabbed her around the throat, and began stabbing her in the head. She was able to get away at one point, but then he attacked her again. According to Upchurch, someone removed German

3

from her around the time that she thought she was going to die. Upchurch testified that she received sixteen staples to the back of her head, reconstructive surgery to her face, a dental implant, and she saw an orthopedist for her arms and hand. She was also diagnosed with post-traumatic stress disorder.

¶9. Investigator Forest Bush with the Horn Lake Police Department testified that when he responded to the scene, Upchurch indicated that German had attacked her with a twelve-inch pegboard hook. According to Investigator Bush, Upchurch had several puncture wounds to her head, a puncture wound to her cheek, bruising on her face, scratches and red marks on her neck, lacerations on her back, bruised arms, a swollen wrist and hands, and scraped and bruised knees.

¶10. Officer Michael Pressgrove testified that when he pulled into the parking lot, he observed German running from the store. According to Officer Pressgrove, German was naked except for his shoes and a shirt. When Officer Pressgrove approached German, he turned around, put his hands in the air, and yelled that he was on fire. German complied with Officer Pressgrove's commanded to get on the ground. Then German stated, "I hurt that woman bad," and "I didn't want to hurt that woman, but the voices told me to." According to Officer Pressgrove, German asked to sit inside a patrol vehicle but became irate and would not let him shut the door. When German was told that he had one more chance to get inside the vehicle, he complied. Ultimately, Officer Pressgrove testified that German was transported to the police station.

¶11. Lieutenant Kevin Nelson testified that he was a certified Crisis Intervention Team

officer and that he spoke with German after the attack. According to Lieutenant Nelson, German told him that he had been released from Lakeside Behavioral Health System (Lakeside) in Memphis a week earlier. Lieutenant Nelson testified that German did not seem confused, and German's demeanor fluctuated between extremely calm and extremely remorseful. According to Lieutenant Nelson, German said he knew he had done something bad, and German suggested that he had been possessed by an evil spirit. Additionally, German said that he wished he could take everything back and pled with Lieutenant Nelson to take him to a mental hospital. Lieutenant Nelson testified that he did not test German for drugs.

¶12. Finally, Dr. Lott testified as an expert in the field of clinical and forensic psychology. According to Dr. Lott, German told him that he had been hospitalized at Lakeside for six days until June 15, 2018—approximately one week before the incident at Target. Lakeside diagnosed German with psychotic disorder (not otherwise specified) and cannabis dependence, and he was prescribed medication for his psychotic symptoms. According to Dr. Lott, German had not received any serious psychiatric treatment until then. Dr. Lott testified that German reported to Lakeside that he had negative thoughts when he smoked marijuana, and German continued to smoke marijuana on a daily basis after his release from Lakeside.

¶13. According to Dr. Lott, German told him that he had smoked half a blunt of weed on the day of the incident. Then he started having thoughts that he needed to do something to prove that he was not a wimp and that someone was going to castrate him. He told Dr. Lott

that Upchurch was the first person he saw and then everything "just exploded." Afterward, he explained that he took off his clothes because he felt like he was in hell. Dr. Lott testified that German believed that the marijuana he smoked that day had been laced with something, but Dr. Lott did not believe that was the case.

¶14.   Dr. Lott testified that cannabis use may precipitate a very intense psychotic break in some people. Further, he explained that cannabis use may cause people to lose their ability to control themselves or to think and act rationally in some cases. Dr. Lott testified that he believed German suffered from late-onset schizophrenic illness and that his cannabis use likely exacerbated or aggravated his symptoms. In other words, although German had a "genuine mental illness," Dr. Lott believed that "his chronic marijuana use more likely than not adversely affected his behavior at the time." Dr. Lott admitted that he could not testify to what extent the marijuana use affected German, but he believed German's mental illness was "primary" and the marijuana use was a "significant trigger."

¶15.   Dr. Lott testified that although German was "acutely mentally ill," he believed that German knew the nature and quality of his actions. Dr. Lott believed that German knew what he was doing and that what he was doing was wrong. He seemingly based his opinion, at least in part, on the fact that German was remorseful after the attack and fled from the store. Ultimately, it was Dr. Lott's opinion that German was not legally insane.

¶16.   After the State rested its case, the defense moved for a directed verdict, which the circuit court denied. Then Dr. Tucker Johnson testified as an expert in the field of clinical psychology on German's behalf. Dr. Johnson evaluated German and testified that she

6

believed that German was legally insane at the time of the attack. Specifically, Dr. Johnson testified that German understood that his behavior was wrong, but he did not have a "full reality-base[d]-understanding" of his behavior. According to Dr. Johnson, German believed that his behavior would save his life. But then Dr. Johnson seemingly acknowledged that German never told anyone that he thought he had to attack Upchurch in order to save his life.

¶17. As to German's marijuana use, Dr. Johnson testified that there were studies that showed that marijuana use could improve psychotic symptoms, and she did not think there was a clear indication that marijuana adversely affected German. However, Dr. Johnson seemingly acknowledged that the diagnostic and statistical manual of mental disorders mentioned that some substances may increase aggressive behavior in people. Ultimately, Dr. Johnson indicated that if cannabis affected German's behavior, the effect would have been minor.

¶18. At the conclusion of Dr. Johnson's testimony, the State moved for a directed verdict as to the issue of legal insanity, which the circuit court denied. Then the defense renewed its motion for a directed verdict, which was denied as well.

¶19. After considering the evidence presented at trial, the jury found that German was not legally insane at the time of the offense and that he was guilty of aggravated assault. The circuit court denied German's post-trial motion, and then German appealed. On appeal, German seemingly claims (1) the State did not present sufficient evidence that he was legally sane at the time of the aggravated assault, and (2) the circuit court erred by admitting at least a portion of Dr. Lott's testimony.

## DISCUSSION

### I. Whether the State presented sufficient evidence of German's sanity at the time of the aggravated assault.

¶20. German seemingly claims that the State did not present sufficient evidence that he was legally sane at the time of the aggravated assault.[2]

¶21. "Mississippi relies on the [*M'Naghten*] Rule to determine legal insanity." *Sanders v. State*, 63 So. 3d 554, 561 (¶24) (Miss. Ct. App. 2010) (citing *Stamper v. State*, 803 So. 2d 1194, 1197 (¶7) (Miss. 2000)). According to this rule, "a defendant may not be held criminally liable for his actions at the time of the alleged crime if he was laboring under such a defect of reason from disease of the mind that either (a) he did not understand the nature and quality of his act, or (b) if he did understand the nature and quality of his act, he did not appreciate that the act was wrong." *Id*. (internal quotation marks omitted). "Whether the defendant was insane at the time of the alleged crime is an issue for the jury, which 'may accept or reject expert and lay testimony.'" *Id*. (quoting *Crawford v. State*, 787 So. 2d 1236, 1243 (¶23) (Miss. 2001)). "A defendant is presumed sane until a reasonable doubt of sanity is created." *Id*. (quoting *Hearn v. State*, 3 So. 3d 722, 738 (¶47) (Miss. 2008)). "Once a reasonable doubt of sanity is raised, the State bears the burden to prove the defendant's sanity beyond a reasonable doubt." *Id*. "[I]n insanity defense cases, perhaps more than any other, a jury's verdict ought to be given great respect and deference." *Id*. (quoting *Crawford*, 787 So. 2d at 1243 (¶29)).

---

[2] In his appellate brief, German specifically argues that Dr. Lott conceded the assault was more likely attributed to his mental condition than to his marijuana use and that therefore the circuit court should have granted him a directed verdict.

8

¶22.    At trial, a shopper testified that she heard German say, "Somebody needs to bleed red blood for the sacrifice," while he was attacking Upchurch.  Another shopper heard him say, "I don't want to kill anyone today."  And as he was removing his clothes, he said, "I don't want to kill her."  Evidence was presented that German immediately began crying and apologizing after the attack.  Officer Pressgrove testified that once German was outside, he said, "I hurt that woman bad," and "I didn't want to hurt that woman, but the voices told me to."  Finally, Lieutenant Nelson testified that German did not seem confused, and his demeanor fluctuated between extremely calm and extremely remorseful when he met with him.  According to Lieutenant Nelson, German said that he knew he had done something bad.

¶23.    Additionally, Dr. Lott testified as an expert in the field of clinical and forensic psychology.  Dr. Lott told the jury that although German was "acutely mentally ill," he believed that German knew the nature and quality of his actions.  Dr. Lott also testified that he believed that German knew or appreciated that the act was wrong.  Dr. Lott seemingly based his opinion, at least in part, on the fact that German was remorseful after the attack and fled from the store.  Additionally, Dr. Johnson testified that German knew that his behavior was wrong.  Accordingly, we find that the jury's finding that German was not legally insane was supported by substantial evidence.

¶24.    To the extent that German claims that the weight of the evidence did not support a finding that he was sane, we note that "weighing testimony and determining sanity under *M'Naghten* is within the province of the jury, and the jury's finding will not be disturbed if

9

it is supported by substantial evidence." *Ealey v. State*, 158 So. 3d 283, 294 (¶36) (Miss. 2015) (citing *Woodham v. State*, 779 So. 2d 158, 164 (¶29) (Miss. 2001)). As discussed, the jury's finding that German was sane was supported by substantial evidence, and the jury's finding was not so contrary to the evidence that allowing it to stand would sanction an unconscionable result. For these reasons, this issue is without merit.

## II.     Whether German waived any issue about Dr. Lott's testimony when he failed to contemporaneously object to the testimony.

¶25.    Next, German seemingly claims that at least a portion of Dr. Lott's testimony should have been stricken, or excluded at trial. Specifically, German argues that Dr. Lott's testimony regarding the use and effects of marijuana was not reliable.

¶26.    In support of his argument, German's appellate brief includes excerpts of Dr. Lott's testimony from the competency hearing and the trial. However, German did not object to Dr. Lott's testimony at trial.[3] This Court has held that "[t]he failure to object to testimony at trial waives any assignment of error on appeal." *Manning v. State*, 269 So. 3d 216, 220 (¶15) (Miss. Ct. App. 2018) (quoting *Ross v. State*, 16 So. 3d 47, 57 (¶21) (Miss. Ct. App. 2009)). Because German failed to object, this issue is waived.

¶27.    Nevertheless, we note that Dr. Lott testified that the literature he reviewed prior to trial did not indicate how much of a substance a person must have in their system. Rather, the literature that he reviewed discussed chronic substance use and how it could affect

---

[3] On one occasion, defense counsel objected to Dr. Lott's testimony, and there was an off-the-record bench conference. Afterward, defense counsel was asked if he needed to put anything on the record, and he responded, "No, Your Honor." It was not until the hearing on his post-trial motion that German seemingly suggested that the court should have stricken at least a portion of Dr. Lott's testimony.

people. Dr. Lott told the jury that his opinion was based on German's statement that he used marijuana on a daily basis. As discussed, because German did not preserve this issue by objecting at trial, it is waived.

## CONCLUSION

¶28. German's claim that the State did not present sufficient evidence of his sanity at the time of the aggravated assault is without merit. Additionally, German waived the issue regarding Dr. Lott's testimony because he did not object at trial. Accordingly, we affirm German's conviction and sentence.

¶29. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., NOT PARTICIPATING.**